Antonio O. RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–01–01082–CR, 01–02–00050–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 27, 2003.

Matt Hennessy, DeGuerin & Dickson, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Attorney-Harris County, and Calvin Hartmann, Asst. Dist. Atty., Houston, for the State.

Panel consists of Justices TAFT, KEYES, and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

Antonio O. Rodriguez, appellant, was charged with possession with intent to deliver at least four grams but less than 200 grams of methamphetamine[1] in cause number 873,191, and possession of more than five pounds but not more than 50 pounds of marihuana[2] in cause number 871,697. The trial court found appellant guilty and assessed punishment for each offense at six years' confinement and a fine of $1,000. We affirm.

## Facts

In March 2001, Crime Stoppers forwarded two telephone calls to Officer Floyd Winkler of the Houston Police Department. The informant told Winkler about a house where an Eric Quiroz was staying. Quiroz was driving a stolen pick-up truck. The informant told Winkler that he had been to the house "several times."

The informant told Winkler that the house was the second house from the end of a dead-end street and from the telephone company; it was on the right hand side of the street; there was a brick walkway with bushes on either side; there were burglar bars; and there was a white van frequently parked at the house. The informant also told Winkler that the house had a television camera that could see out to the street, with a monitor inside the house; and that there was a storage building in the back where narcotics were stored. The owner was an unknown Hispanic man about 24 years old, 5 feet 11 inches tall, and 180 pounds, with a shaved head. The informant told Winkler that he had seen Quiroz and the owner of the house using and selling narcotics.

Winkler and the informant went to the house a couple of times before obtaining the warrant. Officer Winkler confirmed most of the informant's information by viewing the house, except for whether there were cameras on the outside of the house. There was no fencing around the front yard area; nor were there any no trespassing signs.

Winkler contacted Deputy Preston Fosse, a narcotics K–9 handler. Fosse went to the front door of the house with his dog, but without a warrant. Fosse's dog alerted to the odor of one of the four narcotics the dog was trained to detect (marihuana, cocaine, methamphetamine, and heroin).

Once the dog alerted to the front door, Winkler was notified and was able to obtain a judge's signature on a search warrant. Winkler gave the team members who were at the house the go-ahead to enter.

Upon executing the search warrant, the officers found two marihuana plants along the sidewalk at the entrance to the house; a gun, a bag of marihuana, and a purse on the bedroom floor with pills in it; a safe in the bedroom with $2,860 in cash; $470 loose on the floor in the downstairs front bedroom; Swisher cigar wrappers, often used to make marihuana cigarettes, in the kitchen; marihuana around the Swisher boxes; several bricks of marihuana and two bags of methamphetamine in the kitchen cupboard; scales, commonly used to weigh narcotics, in the kitchen; a bag of marihuana and a shoe containing $6,980 found in a weight room closet; and two pistols, an assault rifle, appellant's picture, paperwork in appellant's name, appellant's photo album, $597 in a cigar box, Zanax

---

1. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (Vernon Supp.2003); *id.* § 481.102(6).

2. *See id.* § 481.121(a), (b)(4).

pills and marihuana in an upstairs bedroom. Some of the papers indicated that appellant's parents owned the house and leased it to appellant. Appellant's passport, his social security card, and an apparent drug ledger were recovered from the kitchen. The officers also observed a split screen television set that showed the outside through a small television camera.

The fortified storage building attached to the garage had a thick, fortified, and locked door. The walls of the building were lined with styrofoam and plywood, and the building had one vent hood on top of the garage. Inside the building were a couch, a chair, a table, and large boxes that contained marihuana. Marihuana residue was found in the boxes and on the table, along with a cutting knife. Two bags of marihuana and foam sealant, commonly used to prevent drug-dogs from detecting the odor of narcotics, were found in the building.

Appellant lives at the house and was found there with $2,546 on his person.

### Issues

In eight points of error, appellant argues that (1) the trial court erred in overruling his motions to suppress; (2) the trial court erred in refusing to find that a drug-dog sniff at the front door of a home is a "search" requiring a previously-issued warrant to be legitimate; (3) the drug-dog's alert at his closed and locked door

was the result of a warrantless search that violated his Fourth Amendment right to be secure from unreasonable searches and seizures; (4) the drug-dog's alert at his closed and locked door was the result of a warrantless search that violated his state right against unreasonable searches and seizures under Article 1, § 9 of the Texas Constitution; (5) use of the illegally obtained drug-dog alert to get a warrant violated his Fourth Amendment rights; (6) use of the illegally obtained drug-dog alert to obtain a warrant violated his state rights under Article 1, § 9 of the Texas Constitution; (7) use of the illegally obtained drug-dog alert to obtain a warrant violated Article 38.23 of the Texas Code of Criminal Procedure;[3] and (8) the search warrant affidavit, once redacted of all reference to the drug-dog alert, did not state probable cause.

### Discussion

#### *Motion to Suppress*

██ Appellant has not provided any argument regarding why the trial court erred in overruling his motions to suppress; therefore that argument has been waived.[4]

#### *Search and Seizure*

Appellant has briefed his remaining seven points of error together; therefore, we

---

**3.** Section 38.23 provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then

and in such event, the jury shall disregard any such evidence so obtained.

(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

TEX.CODE CRIM. PROC. art. 38.23 (Vernon Supp. 2003).

**4.** TEX.R.APP. P. 38.1(h).

will address them together.[5]

All of appellant's remaining points of error depend on whether the drug-dog's "sniff" was a "search." Appellant argues that the drug-dog's sniff outside his front door, which alerted the officers to the presence of a controlled substance inside his house, was an illegal search and that the State, therefore, obtained a search warrant based on an illegal search. We address both contentions.

*Expectation of Privacy*

■ It is well settled in this country that the Fourth Amendment provides significant protection to homes and the areas immediately attached to and surrounding them. *United States v. Tarazon–Silva,* 960 F.Supp. 1152, 1162 (W.D.Tex.1997), *aff'd,* 166 F.3d 341 (5th Cir.1998). Those areas immediately attached to and surrounding a home are referred to as the "curtilage," which is a valuable concept for use in determining the "reach" of the Fourth Amendment. *Id.* The Supreme Court of the United States has set out four factors to consider when determining the curtilage: (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken to protect the area from the observations of passersby. *Id.* (citing *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987)). Areas around a home that are readily accessible, such as driveways and outside an apartment door, are not accorded the same degree of Fourth Amendment protection as is the interior of a residence. *See Tarazon–Sil-*

*va,* 960 F.Supp. at 1163; *People v. Dunn,* 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054, 1055–57 (N.Y.1990), *cert. denied,* 501 U.S. 1219, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991).

■ We hold that appellant did not have a reasonable expectation of privacy outside his home where the drug-dog sniffed because the front door area was not enclosed, it was used as the main entrance to the house, and it was not protected from observation by passersby. *See Tarazon–Silva,* 960 F.Supp. at 1162–63 (holding that dog sniff of dryer vent of house located near the driveway was not a search); *Dunn,* 563 N.Y.S.2d 388, 564 N.E.2d at 1056–57 (holding that canine sniff outside an apartment was not a search); *Wilson v. State,* 98 S.W.3d 265, 273 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding defendant had no expectation of privacy in the area exterior to the door of his hotel room).

Appellant also argues that the use of a drug-dog sniff to detect narcotics is "an investigative technique that seeks to remotely observe that which an officer could physically observe only by being inside a house." In making this argument, appellant relies on *Kyllo v. United States,* 533 U.S. 27, 34–35, 121 S.Ct. 2038, 2043, 150 L.Ed.2d 94 (2001). However, his reliance on *Kyllo* and his characterization of the use of a drug-dog as an investigative technique that seeks to remotely observe that which could physically be observed only from inside a house are flawed.

■ A "search" does not occur, for Fourth Amendment purposes, even when

---

**5.** Appellant has not made a distinction between the rights he is afforded under the federal Constitution and the Texas Constitution. Therefore, the court may dispose of his points of error by addressing only the federal Constitution. *Johnson v. State,* 853 S.W.2d

527, 533 (Tex.Crim.App.1992) (declining to address appellant's arguments regarding his state constitutional rights when appellant has not made a distinction between the federal Constitution and the Texas Constitution).

the explicitly protected area of a house is concerned, unless a reasonable expectation of privacy exists in the object of the challenged search. *See Kyllo*, 533 U.S. at 33, 121 S.Ct. 2038; *Porter v. State*, 93 S.W.3d 342, 346 (Tex.App.-Houston [14th Dist.] 2002) (citing *Kyllo*). There is no legitimate expectation or interest in "privately" possessing an illegal narcotic. *Wilson*, at 272; *see also United States v. Jacobsen*, 466 U.S. 109, 122–124, 104 S.Ct. 1652, 1661–62, 80 L.Ed.2d 85 (1984) (holding that there was no justifiable expectation of privacy when officers seized a package believed to contain cocaine); *United States v. Place*, 462 U.S. 696, 706–07, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983) (holding that a "canine sniff" to determine whether luggage contained narcotics did not intrude upon any legitimate expectation of privacy). An investigative method that can only detect the existence of illegal items in a home and does not reveal legal information about the interior of a home, is not a search for Fourth Amendment purposes. *See Porter*, 93 S.W.3d at 346, n. 6 (interpreting *Kyllo*, 533 U.S. at 31–34, 121 S.Ct. at 2042–43); *Wilson*, at 272–73. Therefore, a government investigative technique, such as a drug-dog sniff, that discloses only the presence or absence of narcotics, and does not expose noncontraband items, activity, or information that would otherwise remain hidden from public view, does not intrude on a legitimate expectation of privacy and is thus not a "search" for Fourth Amendment purposes. *Porter*, 93 S.W.3d at 346.[6]

By contrast, the use of a thermal imaging device to record the heat being emitted from within a home-the issue in *Kyllo-is* a "search" because it can reveal information,

other than the presence of contraband, about the interior of a home. *Wilson*, at 272 (citing *Kyllo*, 533 U.S. at 38, 121 S.Ct. at 2045).

The dog's sniff in this case did not explore the details of the house; nor could the sniff reveal anything about the house other than the presence of an illegal narcotic. *See id.* Because the drug-dog sniff in this case did not intrude on a legitimate expectation of privacy, it was not a search and thus not an illegal one. *Porter*, 93 S.W.3d at 347.

*Probable Cause to Search*

 Appellant also contends that the drug-dog sniff did not constitute probable cause to obtain a search warrant and, therefore, the search of his house was illegal. Whether the facts alleged in a probable cause affidavit sufficiently support a search warrant is determined by examining the totality of the circumstances. *Ramos v. State*, 31 S.W.3d 762, 764–65 (Tex.App.-Houston [1st Dist.] 2000, no pet.). The allegations are sufficient if they justify a conclusion that the object of the search is probably on the premises. *Id.* When a trained and certified narcotics dog alerts an officer to apparent evidence or contraband, probable cause exists. *See Wilson*, at 271–72; *see also Harrison v. State*, 7 S.W.3d 309, 311 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (stating that "[t]he smell of burnt marihuana by a trained officer provides ... probable cause" and that "when a trained and certified narcotics dog alerts ... to ... contraband, probable cause exists"). We hold that the drug-dog sniff constituted probable cause to obtain a warrant.

6. *But see United States v. Thomas*, 757 F.2d 1359, 1366–67 (2d Cir.1985) (holding that dog sniff at door of apartment constituted search), *cert. denied*, 474 U.S. 819, 106 S.Ct. 66 (1985), and *cert. denied*, 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 34 (1986); *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805, 819–20 (1999) (holding that dog sniff in hallway outside apartment was a search).

We hold that the use of a drug-dog to sniff for narcotics outside appellant's house was not a "search," and therefore there was *no* need for a previously-issued warrant for the sniff; the sniff did not violate the Fourth Amendment to the United States Constitution or Article I, § 9 of the Texas Constitution; use of the sniff to obtain a warrant did not violate the Fourth Amendment, Article I, § 9 of the Texas Constitution. Because neither the sniff nor its use to obtain a warrant violated the federal or state constitution, the sniff did not violate Article 38.23 of the Texas Code of Criminal Procedure.[7]

We overrule appellant's seven remaining points of error.

### Conclusion

We affirm the judgment of the trial court.