

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00205-CR

| | | |
|---|---|---|
| Gerardo Tomas Rivas | § | From Criminal District Court No. 4 |
| | § | of Tarrant County (1137004D) |
| v. | § | November 15, 2012 |
| | § | Opinion by Justice McCoy |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Bob McCoy



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00203-CR
### NO. 02-11-00204-CR
### NO. 02-11-00205-CR

GERARDO TOMAS RIVAS          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three points, Appellant Gerardo Tomas Rivas appeals the trial court's denial of his motion to suppress and resulting revocation of his deferred adjudication community supervision in three cases. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

On October 30, 2009, the trial court entered orders of deferred adjudication after Rivas made open pleas of guilty to possession with intent to deliver a controlled substance (cocaine) of one gram or more, but less than four grams; possession of a controlled substance (psilocin) of 400 grams or more; and possession with intent to deliver a controlled substance (hydrocodone) of twenty-eight grams or more, but less than 200 grams.

Less than a year later, on September 27, 2010, Rivas was detained for new drug offenses. The State petitioned to proceed to adjudication, alleging that Rivas had violated the terms and conditions of his community supervision by intentionally or knowingly possessing with intent to deliver two controlled substances: 400 grams or more of psilocin and four grams or more but less than 400 grams of tetrahydrocannabinol. Rivas pleaded not true to the State's allegations.

At the hearing on the State's motion, Officer J.C. Williams of the Fort Worth Police Department narcotics unit testified that on September 27, 2010, he had applied for a search warrant for 14605 Chimney Meadow #226, Fort Worth. While Officer Williams was obtaining the warrant, several other officers in the narcotics unit set up surveillance of 14605 Chimney Meadow.

In his affidavit supporting the application for a search warrant to search Rivas's apartment for marijuana and mushrooms, Officer Williams stated that on or around September 27, 2010—the same day that the warrant was issued and

3

executed—a white male known as "Jerry"—"about 6'0", 300 lbs, approximately 45-50 years old, and known as 'Gerardo Rivas'"—was unlawfully possessing mushrooms and marijuana at 14605 Chimney Meadow Street, in the City of Fort Worth, Tarrant County, State of Texas, at the Centre Oaks Apartments, in apartment #226. In his affidavit, Officer Williams described the target building and further stated, in pertinent part, the following facts and circumstances supporting his application as:

2. That on or about the 27th day of September, 2010, your affiant, along with other Officers of the Fort Worth Narcotic Unit continued an investigation of illegal mushrooms containing psilocybin sales from a subject identified as Andrew Munchrath W/M 2/15/92.

3. That on the 27th day of September, 2010, your affiant and Officer Vanwey #3557 were acting in undercover capacity, driving an unmarked car. Officer Vanwey and your affiant had previously negotiated to buy 2½ lbs of mushrooms from Munchrath in exchange for $5,000.00 of US Currency during a previous encounter. At approximately 1400 hours, Munchrath called your affiant and Officer Vanwey and told us that he had the 2½ lbs of mushrooms and to meet him at 3861 S Cooper St at the AMC Theatre parking lot to buy them. We pulled up to this location and met with Munchrath. As Officer Vanwey met with Munchrath, he pulled out two plastic baggies containing mushrooms, which by smell and look are believed to contain psilocybin, in order to sell them to Officer Vanwey. As he did, Officer Vanwey gave the pre-determined arrest signal. We observed the arrest procedure and positively identified Narcotics Officers arresting Munchrath, and that he was the same person that sold us the mushrooms that are believed to contain psilocybin. Munchrath was arrested for Del C/S PG1 >400 GM.

4. That after Munchrath was arrested, Officer White read Munchrath his Miranda Rights and began to interview him. During the interview, Munchrath told Officer White that he picked up the 2½ lbs of mushrooms from a W/M named Jerry while Munchrath was at work. This information was also confirmed by your affiant during the

4

previously mentioned undercover operation. Munchrath told Officer White that Jerry lived at the Centre Oaks Apartments. Munchrath said that approximately 3-4 weeks ago, Munchrath observed a large amount of mushrooms and marijuana, and cocaine in Jerry's apartment. Munchrath said that when picking up the mushrooms from Jerry for this deal, Jerry told him that he had 8 lbs of mushrooms and 1 lb of marijuana at his apartment right now, but that he was selling the rest to another buyer.

5. That once this interview was concluded, Officer Christensen #3523 drove Munchrath by this apartment complex. While at this apartment complex, Munchrath pointed out and showed Officers the exact apartment complex and apartment residence that Jerry lives in, which was apartment #226 at 14605 Chimney Meadow St. at the Centre Oaks Apartment.

6. That on the 27th day of September 2010, Officer HD Cussnick #2587, arrived with his NNDDA certified K-9 partner Kelev. Kelev conducted an open air sniff on the front door and alerted to the presence of narcotic odors from the residence.

The officers had a physical description of Jerry and of his vehicle, a light or white-colored Lexus. After Officer Williams returned with the warrant, saw a white Lexus arrive at the apartment complex, and saw a white male—Rivas—who matched Jerry's physical description exit the vehicle and walk up to the target apartment, police officers detained Rivas and informed him that they had a search warrant for his apartment.

At the revocation hearing, Rivas objected to evidence of the search of the property, arguing that the search warrant was wholly lacking in probable cause. The trial court carried the motion and continued with the hearing.

Officer Williams then testified about his search of Rivas's one-bedroom apartment, where police discovered a bag of Xanax, checks and bank

documents bearing Rivas's name and the apartment's address, several bags of mushrooms, around $6,000 in cash, several glass jars containing what the police believed to be marijuana, and some bags containing what they believed to be other drugs. Fort Worth Crime Lab forensic scientist Yin Zhang testified that she performed the analysis on the items recovered from Rivas's apartment, identifying 2,555.015 grams of mushrooms containing psilocin in one bag and 561.06 grams of mushrooms containing psilocin in another, and 9.12 grams of marijuana.

Officer Steve Smith, another member of the narcotics unit, testified that he assisted in executing the search warrant after assisting in surveillance of Rivas's apartment prior to the warrant's arrival. Officer Smith interviewed Rivas in a patrol car after giving him his *Miranda* warnings. The interview was audio-recorded, and Officer Smith said that Rivas indicated that he understood his rights. Officer Smith stated that he did not make any threats or promises to Rivas to obtain his statement. After Officer Smith testified that Rivas told him that police would find marijuana and mushrooms in his apartment—specifically, in a closet in his bedroom—Rivas objected, arguing that his statement was involuntary and that promises had been made to him to obtain his statement.

The trial court ultimately denied Rivas's motion to suppress, found the State's allegations true, adjudicated Rivas guilty in each of the cases, and assessed twelve years' confinement in each, to be served concurrently. These appeals followed.

## III. Suppression

In his first point, Rivas complains that the trial court erred by denying his motion to suppress because the search warrant did not state probable cause in that the affidavit did not allege that the informant was credible and reliable and the police did not corroborate the informant's information and the facts contained in the affidavit were stale. In his second point, Rivas asserts that the warrant was a general warrant.

### A. Warrant

#### 1. Standard of Review

While we normally review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, under which we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Instead, the trial court is constrained to the four corners of the affidavit. *Id.* (citing *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App.), *cert. denied*, 543 U.S. 944 (2004)). Accordingly, when reviewing a magistrate's probable cause determination, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the probable cause determination "so long as the

7

magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 811; *see also McLain*, 337 S.W.3d at 271; *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

Further, we may not analyze the affidavit in a hyper-technical manner; rather, we must interpret the affidavit "in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made." *McClain*, 337 S.W.3d at 271. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location, and the facts stated in a search affidavit "must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified." *Id.* at 272. "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, No. PD-1511-11, 2012 WL 3965824, at *4 (Tex. Crim. App. Sept. 12, 2012).

**2. Analysis**

During the hearing, Rivas went paragraph by paragraph through the affidavit before making the following critique of the sixth paragraph, which pertains to the K-9 officer's alert:

8

They tried to corroborate it with something called NNDDA. The courts have said that the use of acronyms or whatever that is should be frowned upon because I bet you that a detached, neutral magistrate, like some of the people here in this courthouse, would not know what NNDDA means. But it is NNDDA, certified canine partner; whatever that is. And then it said he did an open air sniff at the front door and alerted to the presence of narcotics odors from the residence.

There can be legal narcotics. Anything that puts you to sleep is kind of what a narcotic is. It's not—it doesn't allege it's an illegal narcotic. It says, it's coming from the residence, but I'm sure the dog alerted on the front door, which might suggest it has been outside of the house.

Rivas then stated his argument as follows:

*So the 4th Amendment objection that I have and Article 1, Section 9 of the State's Constitution objection is that—that is, number one, it's arguably stale.* There's no basis for the information from Munchrath except to say that he had been there. But then under Spinelli, *there's no credibility for Munchrath*. He's a criminal. He's the guy that's selling the dope on the streets and he's trying to flip the attention away from him to somebody else. So I don't think he's credible in that sense, Your Honor.

So they very easily could have written this a little bit more craftily. Or maybe they did write it very craftily, it's hard to say, but *they didn't do anything to corroborate Jerry.* They didn't put anything in here that Jerry drove a white Lexus, that Jerry worked at the health food store in Dallas. Nothing to say about anything that they found out about Jerry, so *there's no credibility to the field informant,* Your Honor.

For those reasons, I think the warrant wholly fails; is not supported by probable cause, Your Honor.

[Emphasis added.] In his reply to the State's response at the hearing, Rivas again concluded with "[I]t's our position that under Aguilar and Spinelli and

Gates, Illinois, that there's no credibility and that the conclusions they make are without corroboration."

Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Romo v. State*, 315 S.W.3d 565, 573 (Tex. App.—Fort Worth 2010, pet. ref'd). An alert by a drug-detection dog outside a person's residence is sufficient to provide probable cause for a warrant to search the site. *Id.* at 573–74; *see also Rodriguez v. State*, 106 S.W.3d 224, 229 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (stating that "[w]hen a trained and certified narcotics dog alerts an officer to apparent evidence or contraband, probable cause exists" to obtain a search warrant), *cert. denied*, 540 U.S. 1189 (2004).

The affidavit in support of the warrant, in addition to the information describing the apartment, stated that an officer "arrived with his NNDDA certified K-9 partner Kelev. Kelev conducted an open air sniff on the front door and alerted to the presence of narcotic odors from the residence." To accord the magistrate appropriate deference and to allow for any reasonably available inferences, we conclude that the magistrate had a substantial basis for concluding that the search would uncover contraband. Notwithstanding the additional information provided to the police by Munchrath, it was not unreasonable for the magistrate to conclude that a "K-9" who conducted an "open air sniff" was trained to detect the smell of narcotics and that, from the K-

9's "alert," the dog had experience with the odor-causing agent, even if the magistrate did not know that "NNDDA" is an acronym for National Narcotic Detector Dog Association. *See Skaggs v. State*, No. 11-10-00273-CR, 2012 WL 4849136, at *3 (Tex. App.—Eastland Oct. 11, 2012, no pet. h.) (mem. op., not designated for publication) (concluding that the magistrate could reasonably infer that the K-9 was trained to detect the smell of narcotics and had experience with the odor-causing agent based on statement in the affidavit that "Brown County Sheriff's Deputy James Stroope with his K-9 Izzy conducted an open air sniff of the outside of the travel trailer. K-9 Izzy made positive alerts at the southeast entrance door to the travel trailer."); *see also $43,774.00 U.S. Currency v. State*, 266 S.W.3d 178, 185 (Tex. App.—Texarkana 2008, pet. denied) (reciting that dog who alerted to the odor of contraband was certified by the National Narcotic Detector Dog Association); *Elersic v. State*, No. 06-98-00208-CR, 1999 WL 486011, at *11 (Tex. App.—Texarkana July 13, 1999, pet. ref'd) (op. on reh'g) (not designated for publication) (same); Leslie A. Lunney, *Has the Fourth Amendment Gone to the Dogs?: Unreasonable Expansion of Canine Sniff Doctrine to Include Sniffs of the Home*, 88 Or. L. Rev. 829, 835–36 (2009) ("[P]rivate vendors such as the U.S. Police Canine Association (USPCA), the National Narcotic Detector Dog Association (NNDDA), and the American Working Dog Association (AWDA) offer training classes for canine handlers, as well as certification of drug-detection dogs, based on each association's own

11

internally generated certification standards."). Kelev's alert provided sufficient probable cause to support the affidavit.[2] *See Romo*, 315 S.W.3d at 573–74.

Further, although Rivas argues that the facts stated in the affidavit were stale, Kelev alerted to Rivas's front door on the same day that the warrant was obtained and executed. *See McKissick v. State*, 209 S.W.3d 205, 214 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (stating that the facts set out in an affidavit supporting a warrant must not have become stale when the search warrant issues). Because this fact was not stale and was sufficient to support probable cause to issue the warrant, we overrule Rivas's first point without needing to reach his complaints about the informant's credibility or about any additional corroboration. *See* Tex. R. App. P. 47.1.

And although Rivas complains in his second point that the search warrant was a "general warrant" prohibited by the federal and state constitutions, the State has pointed out that Rivas did not raise this complaint in the trial court, and the record bears this out. To preserve a complaint for our review, a party must

---

[2]In his appellate brief, Rivas now argues that the paragraph of the affidavit involving the drug dog sniff is broad, vague, and does not establish K-9 partner Kelev's credibility. He further argues that the fact that Kelev was a dog "must be a reasonable inference the magistrate had to draw," and that there is no indication of the skills, if any, that Kelev was certified for. And he argues that the affidavit failed to inform the magistrate of what NNDDA stands for, what it certifies, what front door was sniffed, or whether the alert was to the presence of illegal narcotics. However, these were not the ultimate bases for his objection at the hearing, and based on the four corners of the affidavit, the magistrate could have drawn these reasonable inferences based on the combined logical force of facts set out in the affidavit. *See Duarte*, 2012 WL 3965824, at *4; *McLain*, 337 S.W.3d at 271–72.

have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g). Because Rivas has not preserved this complaint for our review, we overrule his second point.[3]

## B. Statement

In his third point, Rivas argues that his recorded statement, State's Exhibit 19, was not voluntary because it was intentionally induced by promises made by the interviewing officer. However, although Rivas complains that his statement was involuntary, Rivas did not initially object when the officer who took his statement testified at the hearing that Rivas had told him that the police would

---

[3]Further, although Rivas essentially asserts that the warrant and supporting affidavit constitute an improper "cut and paste" job containing surplusage in some parts and a lack of detail in other parts, it still contained a particularized description of the exact location of the place to be searched and the objects and person to be seized in connection with the search, as required by the Fourth Amendment. *See Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 2748 (1976); *see also Gonzales v. State*, 577 S.W.2d 226, 228 (Tex. Crim. App.). *cert. denied*, 444 U.S. 853 (1979). And Rivas does not point us to specific evidence seized pursuant to an improper general description and offered into evidence. *See Rodgers v. State*, 162 S.W.3d 698, 709–10 (Tex. App.—Texarkana 2005) (stating that an appellant, when alleging that a general warrant was issued, must point to specific evidence seized pursuant to the complained-of paragraph and offered into evidence in order to preserve his claim for review), *aff'd*, 205 S.W.3d 525 (Tex. Crim. App. 2006).

13

find marijuana and mushrooms in the closet of his bedroom. *See* Tex. R. App. P. 33.1(a)(1); *Lovill*, 319 S.W.3d at 691–92.

Further, the other evidence presented at the hearing—particularly Officer Williams's testimony about recovering the drugs and bank documents bearing Rivas's name and the apartment's address from the one-bedroom apartment—was sufficient even without the recorded statement, under the preponderance standard applicable to revocation proceedings, to support the trial court's finding that Rivas had violated the terms and conditions of his deferred adjudication community supervision by intentionally or knowingly possessing the quantities of marijuana and mushrooms alleged in the State's petition to revoke. *See Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). Thus, even if Rivas had timely objected to the officer's initial testimony, we would not need to reach the trial court's denial of Rivas's objection to the recorded statement because the error, if any, was ultimately harmless. *See* Tex. R. App. 44.2, 47.1. We overrule Rivas's third point.

## IV. Conclusion

Having overruled Rivas's three points, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

GARDNER. J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 15, 2012