**Opinion issued November 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00572-CR

———————————

**BRADLEY RAY MCCLINTOCK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd Criminal District Court**
**Harris County, Texas**
**Trial Court Case No. 1280089**

---

### DISSENTING OPINION

I respectfully dissent. In this case, the police obtained a warrant to search

appellant's upstairs residence for marijuana based on Houston Police Department

Officer R. Arthur's affidavit that he smelled marijuana at that "location" and that

the trained narcotics-sniffing dog Sita likewise detected the odor of marijuana from the top of a public stairway outside the door of appellant's second-floor residence.

The Court of Criminal Appeals held that the warrantless dog sniff search on the curtilage of appellant's residence was illegal under *Florida v. Jardines*, decided while appellant's case was on appeal. *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). The court then found that the affidavit on which the search warrant was obtained, based in part on the warrantless dog-sniff search, was "sufficiently ambiguous" that it could not be said that, without the narcotics dog's alert, the evidence the magistrate had before him to rely on in issuing the warrant, "even taken together with the other independently acquired information stated in the warrant affidavit , . . . *clearly* established probable cause." *Id.* at 19–20.

However, on petition for discretionary review, the State brought the court's attention to *Davis v. United States*, 131 S. Ct. 2419 (2011). The Supreme Court held in *Davis* that a new Supreme Court ruling that a search is illegal under the Fourth Amendment does *not* apply retroactively to render inadmissible evidence obtained from a search that occurred prior to the ruling that was conducted by the police in good faith in accordance with binding precedent at the time of the search. *See* 131 S. Ct. at 2425–26, 2429, 2434 (holding that exclusionary rule did not bar admission of weapon discovered during search of passenger compartment of vehicle incident to arrest of passengers, even though Supreme Court determined in

2

intervening case that such searches violate Fourth Amendment, because officer reasonably relied on binding precedent at time of search that permitted officer to search passenger compartment). The Court of Criminal Appeals remanded to this Court the question of whether, in light of *Davis*, evidence seized pursuant to a search warrant that was obtained, in part, as a result of a search subsequently declared to be in violation of the Fourth Amendment is admissible in Texas state courts under the good-faith exception to the exclusionary rule.

The majority's answer to this question—that the evidence is inadmissible—is, in my view, incorrect on the law. I would hold, in accordance with *Davis*, that the good-faith exception to the exclusionary rule applies in this case. Thus, the evidence obtained by police pursuant to the search warrant issued on the basis of probable cause supplied in part by the dog-sniff search then deemed legal under binding authority was not subject to exclusion. I would therefore affirm the judgment of the trial court.

## A. The Exclusionary Rule and the Good-Faith Exception

The majority concludes that Texas's exclusionary rule and its good-faith exception are statutory, not judicially created like the federal rule, and that the Texas exclusionary rule is broader than the federal rule. It holds that, therefore, *Davis*, a federal Supreme Court case, does not apply in Texas state court, and that it need not consider *Davis* in determining whether the evidence seized in this case

3

was admissible. I disagree. I believe the majority's holding is based on a misinterpretation of both the Texas exclusionary rule and its good-faith exception and the federal exclusionary rule and good-faith exception, as well as the relationship between them.

The federal exclusionary rule, parsed by the United States Supreme Court in *Davis*, is a "prudential doctrine" created by the Supreme Court "to compel respect for the constitutional guaranty" against "unreasonable searches and seizures" under the Fourth Amendment by requiring the courts to exclude illegally obtained evidence. *Davis*, 131 S. Ct. at 2426 (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S. Ct. 1437, 1444 (1960)); *see also id.* at 2427 (stating that exclusionary rule is "a 'judicially created remedy' of this Court's own making") (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 620 (1974)). It is neither a "personal constitutional right" nor a redress for injury occasioned by an unconstitutional search. *Id.* at 2426. Rather, the rule's "sole purpose" is "to deter future Fourth Amendment violations" by rendering evidence seized in violation of the Fourth Amendment inadmissible. *Id.*

Having promulgated the exclusionary rule, however, the Supreme Court recognized that its application "exacts a heavy toll" on the judicial system and the public by requiring the courts "to ignore reliable, trustworthy evidence bearing on guilt or innocence" and by causing the truth to be suppressed and criminals to be

4

set loose without punishment. *Id.* at 2427. Therefore, the Court further held that "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Id.* at 2426–27 (quoting *United States v. Janis*, 428 U.S. 433, 454, 96 S. Ct. 3021, 3032 (1976)).

The Supreme Court thus requires a balancing test to determine whether evidence should be excluded under the rule. *See id.* at 2427–28. Under this test, exclusion is appropriate only when "the deterrence benefits of suppression . . . outweigh its heavy costs." *Id.* at 2427. "When the police exhibit 'deliberate,' 'reckless' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, . . . the 'deterrence rationale loses much of its force.'" *Id.* at 2427–28 (citations omitted).

On the basis of this rationale, the Supreme Court has long "extended the good-faith exception to searches conducted in reasonable reliance on subsequently invalidated statutes"; and it has "'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct"; thus, it has held that the exclusionary rule does not apply when police conduct a search in "objectively reasonable reliance" on a warrant later held to be invalid. *Id.* at 2428–29 (citing *Illinois v. Krull*, 480 U.S. 340, 349–50, 107 S. Ct. 1160, 1167 (1987),

5

and quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 702 (2009), and *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984)).

Relying on the foregoing reasoning and precedents, the Supreme Court held in *Davis* that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.* at 2429. In *Davis*, the Supreme Court expressly distinguished the *exclusionary rule* from the *retroactivity rule* for newly created Fourth Amendment precedent first announced in *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708 (1987). *See id.* at 2429–30. The retroactive application of a new substantive Fourth Amendment rule, it stated, "raises the question whether a suppression remedy applies; it does not answer that question." *Id.* at 2431. The Court explained, "[E]xclusion of evidence does not automatically follow from the fact that a Fourth Amendment violation occurred. The remedy is subject to exceptions and applies only where its 'purpose is effectively advanced.'" *Id.* Thus, because "the sole purpose of the exclusionary rule is to deter misconduct by law enforcement," where the police have not been guilty of any culpable conduct and have "reasonably relied on binding . . . precedent" in executing a search, "[t]hat sort of blameless police conduct . . . comes within the good-faith exception and is not properly subject to the exclusionary rule." *Id.* at 2432, 2434; *see also Leon*, 468 U.S. at 918, 104 S.

Ct. at 3418 ("[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.").

Assuming the applicability in Texas state courts of Supreme Court precedent construing the Fourth Amendment, the exclusionary rule, and the good-faith exception to that rule, this case falls squarely within the scope of the good-faith exception to the federal exclusionary rule established by the Supreme Court in *Davis* and its predecessors. Here, there is no evidence whatsoever that the police exhibited "'deliberate,' 'reckless' or 'grossly negligent' disregard for Fourth Amendment rights" when they relied, in part, on a warrantless dog-sniff search to obtain a warrant to search appellant's residence. *See Davis*, 131 S. Ct. at 2427. Rather, they relied upon long-established and binding precedent in both the federal courts and the Texas courts stating that a dog sniff was not a search within the meaning of the Fourth Amendment and that the alert of a trained dog as to the presence of contraband could be relied upon to establish probable cause to obtain a legal warrant to search the premises where the alert occurred. *See, e.g.*, *Illinois v. Caballes*, 543 U.S. 405, 409, 410, 125 S. Ct. 834, 838 (2005) (use of "well-trained narcotics-detection dog" on motor vehicle during traffic stop "does not rise to the level of a constitutionally cognizable infringement" and "does not violate the Fourth Amendment"); *United States v. Tarazon-Silva*, 166 F.3d 341, 341 (5th Cir.

7

1998) (per curiam) (dog sniff of outer edge of garage and dryer vent on exterior wall of house was not search pursuant to Fourth Amendment); *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) (per curiam) (positive dog alert creates probable cause to search vehicle); *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993) ("A dog 'sniff' is not a search."); *Romo v. State*, 315 S.W.3d 565, 573 (Tex. App.—Fort Worth 2010, pet. ref'd) (dog sniff of garage door and backyard fence of defendant's home not search for Fourth Amendment purposes); *Rodriguez v. State*, 106 S.W.3d 224, 228–29 (Tex. App.—Houston [1st Dist.] 2003, pet ref'd) (dog sniff conducted at front door of defendant's home not search); *Porter v. State*, 93 S.W.3d 342, 346–47 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (stating that investigative methods that can only detect existence of illegal items in home and do not reveal legal information about interior are not searches for Fourth Amendment purposes and holding that dog sniff outside front door did not constitute search under Fourth Amendment).

As these federal and state precedents show, the case law relating to dog sniffs occurring outside a public entrance to a defendant's home was deemed valid law at the time the search warrant issued in this case. It was only subsequently abrogated by *Jardines*. At that time, this case was already on appeal.

Here, the affidavit executed by Officer Arthur detailing both his own and the dog Sita's detection of the odor of marijuana from outside appellant's residence

8

was made in good faith, in reliance on binding precedent, and without culpability of any kind on the part of the police. *See* 131 S. Ct. at 2426–29. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926, 104 S. Ct. at 3422. None of the conditions that would limit the applicability of the good-faith exception apply here. Therefore, relying on federal and state precedent, and applying the rule in *Davis* to the facts of this case, I would hold that, at the time it was made, Officer Arthur's affidavit provided probable cause for the magistrate to issue the search warrant pursuant to which the police obtained the evidence of the marijuana operation in appellant's home upon which he was convicted. And, I would further hold that the evidence obtained by the police in reliance on the warrant issued by the magistrate based in part on the then-legal warrantless dog-sniff search was admissible under the federal good-faith exception to the exclusionary rule.

## B. The Majority Opinion

The majority, however, holds that Texas's statutory exclusionary rule and its good-faith exception do not derive from the federal rule and, indeed, that Texas law expressly overrides the federal rule with its statutory exclusionary rule set out

in Texas Code of Criminal Procedure article 38.23(a). With regard to *Davis*, the majority states, "[W]e need not address the parties' arguments about whether Officer Arthur acted with objective good-faith reliance on binding precedent if *Davis* does not create a valid exception to the Texas exclusionary statute." Slip Op. at 9. It then concludes that *Davis*'s holding is inconsistent with the terms of Texas's statutory good-faith exception to the exclusionary rule set out in article 38.23(b) and that *Davis* cannot and "does not create a valid exception to the Texas exclusionary statute." Slip Op. at 9, 13–14. Accordingly, it spends the rest of its opinion explaining why, in its view, the federal good-faith exception to the exclusionary rule, explicated in *Davis*, is inconsistent with Texas' statutory exclusionary rule and good-faith exception and is inapplicable here.

In my view, the majority opinion is based on two errors of law. First, Texas did *not* pass its exclusionary statute to override the federal exclusionary rule and its good-faith exception devised by the United States Supreme Court for use in applying Fourth Amendment rulings. It did just the opposite: it expressly adopted the federal rule and the federal case law that established and construes it. Moreover, as shown above and below, the Texas courts have consistently followed both federal and state precedent in construing this statute, with a lone exception for a direct conflict between the language of article 38.23 and federal precedent—a conflict not present in this case. Second, the majority's conclusion that the warrant

10

upon which the search of appellant's apartment was based was illegal at the time it was issued *assumes* the answer to the question posed to this Court by the Court of Criminal Appeals as its major premise. Therefore, it answers the question *whether* the warrant was illegal at the time it was issued by concluding that *because* the probable cause for the warrant was based in part on a warrantless dog-sniff search, which was only subsequently held to be unconstitutional in *Jardines*, the warrant was not based on probable cause at the time it was issued and, therefore, was illegal. This argument is both circular and question-begging and, in my opinion, its conclusion is incorrect.

### 1. Texas's Exclusionary Rule: Code of Criminal Procedure Article 38.23

Texas's exclusionary statute provides, in relevant part:

(a)     No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

. . . .

(b)     It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). Subsection (a) sets out the exclusionary rule, and subsection (b) sets out the good-faith exception to the rule.

### 2.  **Miles v. State** *and the Origin and Scope of Texas's Exclusionary Rule*

Relying on the Court of Criminal Appeals' 2007 opinion in *Miles v. State*, the majority claims that the Texas exclusionary rule "is not merely a judicial creation" but "was enacted by the legislature," so that Texas courts may disregard the United States Supreme Court's construction of the rule. *See* Slip Op. at 10 (citing *Miles v. State*, 241 S.W.3d 28, 33–36 (Tex. Crim. App. 2007)).  This is the opposite of what *Miles* actually says and is an incorrect statement of Texas law. The majority then states, "The Texas exclusionary statute is 'broader than its federal counterpart' and is therefore more broadly protective of individual rights." *Id.* at 11 (quoting *Miles*, 241 S.W.3d at 34).  This statement is narrowly correct, but is applied by the majority out of context in this case to reach a conclusion supported neither by the text of the Texas exclusionary statute nor by the construction of that statute and its history as explicated by the Court of Criminal Appeals in *Miles*.

*Miles* discusses the history of the exclusionary rule at length, pointing out that the Texas Legislature enacted the predecessor to article 38.23 in 1925 expressly to overrule the 1922 Court of Criminal Appeals Prohibition-era case, *Welchek v. State*, 247 S.W. 524 (Tex. Crim. App. 1922).  241 S.W.3d at 33.  In *Welchek*, the Court of Criminal Appeals had refused to recognize an exclusionary rule under the Texas Constitution for three jugs of whiskey seized without a

12

warrant and had "specifically rejected the reasoning of the United States Supreme Court cases that had imposed an exclusionary rule on federal courts under the Fourth Amendment." *Id.* The statute was thus enacted by the Texas Legislature to impose on Texas courts the exclusionary rule created by the United States Supreme Court for use in the federal courts. And it statutorily *abrogated* the Court of Criminal Appeals case that had refused to recognize the rule.

The Court of Criminal Appeals stated in *Miles*—directly contrary to what the majority says it states—that by enacting the exclusionary rule, now article 38.23, "[t]he Legislature thus 'sanctioned the construction by the Federal courts of the search-and-seizure clause of the [federal] Constitution.'" *Id.* at 34 (quoting *Chapin v. State*, 296 S.W. 1095, 1100 (Tex. Crim. App. 1927)). The only difference with respect to the exclusionary rule as set out in the predecessor to article 38.23(a) was that the Texas Legislature expanded the rule to apply not only to evidence illegally seized by government officials, as the federal rule does, but also to evidence illegally seized by private individuals, by adding the phrase "or other person" to article 38.23(a). *Id.* at 34–35. Thus, the rule excludes evidence obtained "in violation of any provision of the Constitution or laws of the State of Texas, or of the United States of America" not only by "an officer" but also by an "other person," including "'vigilante-type private citizens [acting] in concert with the police conducting illegal searches for whiskey.'" *Id.* at 33–35 (quoting *State v.*

*Johnson*, 939 S.W.2d 586, 591 (Tex. Crim. App. 1996) (McCormick, P.J., dissenting)). However, this is the *only* way mentioned in *Miles* in which the Texas exclusionary rule was made statutorily broader than the federal rule. Because the issue in this case is the application of the exclusionary rule to evidence seized by police officers, the fact that article 38.23(a) extends the protection of the exclusionary rule to evidence seized by "other person[s]" is irrelevant to this case. Thus, there is no support in *Miles* for the majority's broadening of the exclusionary rule on the ground that article 38.23(a) is broader than the federal exclusionary rule.

The Court of Criminal Appeals' opinion in *Miles* cannot plausibly be construed as providing that, in enacting the exclusionary rule by statute in Texas, the Texas Legislature intended to reject the federal exclusionary rule and its construction by the federal courts and to impose broader protections against searches and the seizure of evidence by police than the United States Supreme Court has imposed upon the federal courts. *See id.* at 34 (stating that, in enacting predecessor to article 38.23, Legislature "sanctioned the construction by the Federal courts of the search-and-seizure clause of the [federal] Constitution"). The only material difference between the exclusionary rule set out in article 38.23(a) and the federal rule is that the Texas statute extends the exclusionary rule to

evidence seized by "other persons" acting illegally. The majority's argument that *Miles* supports its conclusion is, in my view, without merit.

*Miles* did not, however, deal with or discuss the statutory good-faith exception to the exclusionary rule set out in article 38.23(b).

### 3. The "Warrant Based on Probable Cause" Requirement and Article 38.23(b)'s "Good-Faith Exception" to the Exclusionary Rule

The majority also claims that the good-faith exception to the exclusionary rule, as the Supreme Court explicated it in *Davis*, cannot apply to this case because it is not consistent with the text of article 38.23(b), which sets out the good-faith exception to the exclusionary rule. *See* Slip Op. at 12–13. That text provides for an exception to the exclusionary rule for evidence "obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX. CODE CRIM. PROC. ANN. art. 38.23(b). The majority opines, "Notably, the statute contains an explicit exception in subsection (b) for evidence obtained in objective good-faith reliance on a warrant 'based on probable cause.' The Court of Criminal Appeals has refused to entertain exceptions to the Texas exclusionary rule that are not consistent with Article 38.23's text." Slip Op. at 12 (quoting TEX. CODE CRIM. PROC. ANN. art. 38.23(b)).

The majority opines that the good-faith exception to the exclusionary rule in *Davis* does not apply in this case because the good-faith exception as explicated in that federal Supreme Court case conflicts with the express language of article

15

38.23(b) by allowing illegally obtained evidence to be admitted. Slip Op. at 13–14. Thus, it opines, *Davis* creates an exception to the exclusionary rule in conflict with Texas law. *Id.* It also concludes that Texas case law, in construing the good-faith exception in article 38.23(b), does not recognize the authority of federal cases construing the federal good-faith exception to the exclusionary rule as precedential or persuasive. Slip Op. at 17–18. I disagree with both arguments and address them in turn.

### a. The argument that Davis conflicts with article 38.23(b)

Despite the majority's claims, there is no conflict between the plain language of article 38.23(b) and *Davis*. Article 38.23(b) provides a statutory good-faith exception to the exclusionary rule that permits the admission of evidence that was obtained by a law enforcement officer acting in objective good-faith reliance upon a warrant issued by a neutral magistrate based on probable cause. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(b). *Davis* does not conflict with that language in any way. And merely claiming—as the majority does—that *Davis* conflicts with the text of article 38.23(b) because a warrantless dog-sniff search is *unlawful* and therefore cannot provide probable cause for a warrant entirely begs the question posed to this Court by the Court of Criminal Appeals: Does the good-faith exception to the exclusionary rule preserve the admissibility of evidence that was obtained pursuant to a warrant issued on the basis of probable cause supplied, in

16

part, by a warrantless search that was deemed *lawful* under binding precedent at the time of the search but that was *subsequently* held by a new ruling of the Supreme Court *to be unlawful* under the Fourth Amendment? Or does the subsequent Supreme Court ruling holding a warrantless dog-sniff search to be illegal operate retroactively to make the warrantless dog-sniff search *unlawful at the time of the search*, vitiating the probable cause relied upon to obtain the warrant to search appellant's apartment and rendering that search unlawful and the evidence seized inadmissible?

*Davis* says that the Supreme Court's subsequent ruling that a warrantless search is constitutionally invalid does *not* retroactively render inadmissible evidence that was obtained by police officers in good-faith reliance on binding precedent that, at the time of a warrantless search, deemed the search legal, and no Texas law says anything different. *See* 131 S. Ct. at 2429. The majority, however, ignores *Davis* as inapplicable and says, on the basis of no authority other than its misreading of relevant law, that *Jardines* made the dog-sniff search in this case retroactively illegal and therefore the good-faith exception does not apply.

Essentially, the majority reasons that article 38.23(b) saves from exclusion only evidence seized in good-faith reliance on a warrant "based on probable cause," and it concludes that the evidence in this case was *not* obtained pursuant to a warrant "based on probable cause" because *Jardines* retroactively vitiated the

17

probable cause finding necessary to sustain the warrant when it declared the warrantless dog-sniff on which this warrant was, in part, obtained unconstitutional. *See* Slip Op. at 15–17. But this argument, as stated above, is circular. A circular argument is an invalid argument that cannot support a legal ruling—here, the majority's ruling that *Jardines* applies retroactively to exclude the marijuana evidence seized from appellant's house.

When the question posed to us by the Court of Criminal Appeals is actually addressed, the answer to it is the opposite of the majority's. At the time the warrant issued in this case—which was well prior to the Supreme Court's decision in *Jardines* declaring warrantless dog-sniff searches occurring on the curtilage of a residence unconstitutional—an unbroken string of Texas precedential cases relying on both federal and Texas law interpreted the Fourth Amendment to permit just such warrantless dog sniffs. *See Caballes*, 543 U.S. at 409, 410, 125 S. Ct. at 838 (use of "well-trained narcotics-detection dog" during traffic stop does not violate Fourth Amendment); *Tarazon-Silva*, 166 F.3d at 341 (dog sniff of garage and vent on exterior of house not search under Fourth Amendment); *Williams*, 69 F.3d at 28 (positive dog alert creates probable cause to search vehicle); *Romo*, 315 S.W.3d at 573 (dog sniff of garage door and backyard fence not search under Fourth Amendment); *Rodriguez*, 106 S.W.3d at 228–29 (dog sniff at front door of house not search); *Porter*, 93 S.W.3d at 346–47 (same). Therefore, under *Davis*, the

18

evidence seized pursuant to the warrant here should not have been excluded, as it was seized pursuant to "a warrant issued by a neutral magistrate based on probable cause," as required by the plain language of article 38.23(b), and that was obtained by officers acting in good-faith reliance on a warrantless dog-sniff search, which had long been held to be legal under binding Texas and federal precedent.

*Jardines* construes the reach of the Fourth Amendment and *Davis* continues a long line of federal and state cases construing the exclusionary rule and holding that evidence seized in violation of the Fourth Amendment through police *misconduct* must be excluded *but* that evidence seized by the police in *good faith* need not be.

### b. *Texas case law construing the scope of the good faith exception*

No Texas case law prior to the majority opinion in this case has held that Texas does not follow United States Supreme Court rulings construing the exclusionary rule and its good faith exception. Rather, *Miles* expressly states that, in enacting the predecessor to article 38.23, the Texas Legislature "sanctioned the construction by the Federal courts of the search-and-seizure clause of the [federal] Constitution." 241 S.W.3d at 34 (quoting *Chapin*, 296 S.W. at 1100). And the Texas exclusionary statute was explicitly based on the federal exclusionary rule— as the Court of Criminal Appeals has acknowledged. *See id.*

19

The majority places great emphasis on two Court of Criminal Appeals opinions construing Texas's statutory good-faith exception to the exclusionary rule that it contends support its ruling—*Wehrenberg v. State*, 416 S.W.3d 458 (Tex. Crim. App. 2013), and *State v. Daugherty*, 931 S.W.2d 268, 269 (Tex. Crim. App. 1996). Neither of these cases, however, supports the majority's opinion. Rather, as the cases show, federal law construing the exclusionary rule and the good-faith exception apply in every Texas state court case under article 38.23 unless the express language of that article renders federal precedent inapplicable. *Daugherty* and *Wehrenberg* illustrate this point.

In *Daugherty*, the Court of Criminal Appeals held that the federal "inevitable discovery" doctrine—which permits the admission of evidence in federal court that was *unlawfully* obtained but that would inevitably have been discovered—is inapplicable in Texas because the plain language of article 38.23(b) provides a good faith exception to the exclusionary rule only for evidence that was *lawfully* obtained. *See* 931 S.W.2d at 270. Specifically, article 38.23(b) protects the admissibility only of "evidence . . . obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued . . . based on probable cause." TEX. CODE CRIM. PROC. ANN. art. 38.23(b). The court held in *Daugherty* that the terms of article 38.23 "must apply in all cases not excepted" and that when the evidence was, in fact, seized illegally, the illegality of the seizure may not be

ignored simply because the evidence would have been discovered anyway. 931 S.W.2d at 270–71. However, *Daugherty*, by its own terms, is inapplicable in this case because the inculpatory evidence against appellant was obtained pursuant to a warrant that was issued on the basis of probable cause that was deemed *lawfully* obtained under both federal and state precedent at the time of the search. The courts, therefore, do not have to rely in this case on the inevitable discovery of appellant's marijuana operation to justify admissibility of that evidence because it was obtained pursuant to a warrant that was itself deemed lawfully obtained at the time it issued. This is the exact opposite of the situation in *Daugherty*.

*Wehrenberg*, however, represents the other side of the coin from *Daugherty*, and it *is* applicable here. In that case, the Court of Criminal Appeals upheld the admissibility in Texas courts of evidence *lawfully obtained* pursuant to the federal "independent source" doctrine. *Wehrenberg*, 416 S.W.3d at 472–73. And it specifically contrasted that doctrine with the "inevitable discovery" doctrine, which the court had held in *Daugherty* does not save from exclusion evidence *unlawfully obtained* on the ground that it inevitably would have been discovered. *Id.* The court explained the difference, stating, "Although evidence that has actually been acquired in an unlawful manner is considered 'obtained' in violation of the law, regardless of whether it inevitably would have been discovered, the same cannot be said of evidence discovered and obtained pursuant to an

21

independent source because that evidence is *lawfully obtained at the time of seizure*." *Id.* (emphasis added). This is exactly what happened here.

This case is properly governed by *Wehrenberg* and *Davis*. There is no inconsistency between the plain language of article 38.23 and *Davis*'s (and its federal and state predecessors') holding that the exclusionary rule does not apply to evidence obtained when police conduct a search in "objectively reasonable reliance" on a warrant lawfully obtained under "binding judicial precedent" at the time of the search, even if, under a subsequent Supreme Court interpretation of the Fourth Amendment, the warrant would be considered to have been unlawfully obtained. *See Davis*, 131 S. Ct. at 2428. There is also no evidence of any culpable police conduct that would render the good-faith exception inapplicable. *See id.* at 2428–29. And there is no language in article 38.23(b) that is inconsistent with the Texas courts holding admissible evidence obtained in "objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause" at the time of seizure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(b). Thus, under *Davis* and *Wehrenberg*, the evidence of appellant's marijuana operation should be deemed "lawfully obtained at the time of seizure." *See Wehrenberg*, 416 S.W.3d at 473.

In sum, *Jardines* extends the protection of the exclusionary rule to evidence seized as a result of a warrantless dog sniff on the curtilage of a residence. And

*Davis* preserves the admissibility of evidence seized by the police prior to that ruling pursuant to a warrant obtained in good-faith reliance on binding precedent at the time the warrant was obtained. Nothing in Texas law or in the text of article 38.23 provides any basis for applying *Jardines* and ignoring *Davis* in this case.

Having failed to address *Davis*, however, and without showing any genuine conflict between the federal good-faith exception to the exclusionary rule as explicated in *Davis* and the express terms of Texas's statutory good-faith exception set out in article 38.23(b) or any genuine conflict between applicable federal law construing the good-faith exception and controlling Texas precedent, the majority in this case does exactly the *opposite* of what the Supreme Court said in *Davis* that a court construing the exclusionary rule and its good-faith exception in deciding Fourth Amendment cases *should* do: it declares the warrant obtained by Officer Arthur to search appellant's residence to be illegal because of the *subsequent* change in the construction of the Fourth Amendment by the Supreme Court in *Jardines* and then declares the officers' actions in executing the warrant *retroactively illegal* and the evidence seized under the warrant inadmissible, even though the search was undertaken in objective good faith and was based on probable cause under precedent binding at the time the warrant was issued.

The majority's construction of the text of article 38.23 is not only unfounded in law but objectively unreasonable under the Supreme Court and Texas cases that

established the exclusionary rule and its good faith exception, in that it entails exactly the absurd consequences avoided by applying the exclusionary rule and the good-faith exception in accordance with *Davis*, *Miles*, and *Wehrenberg*. The majority opinion requires the courts to construe the exclusionary rule as having the *opposite* purpose from that for which it was promulgated—the deterrence of police illegality—and to apply it where that purpose is *not* advanced and, therefore, should *not* be applied. *See Miles*, 241 S.W.3d at 35 ("Deterrence of police illegality is the 'core' rationale for applying the federal exclusionary rule . . . ."); *see also Davis*, 131 S. Ct. at 2431 ("[E]xclusion of evidence does not automatically follow from the fact that a Fourth Amendment violation occurred. The remedy is subject to exceptions and applies only where its 'purpose is effectively advanced.'") (citations omitted). The majority's holding thus vitiates the purpose of both the exclusionary rule and the good faith exception.

For the foregoing reasons, I cannot join the majority opinion or its holding, and I therefore must dissent.

**Conclusion**

I would affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

Publish.  TEX. R. APP. P. 47.2(b).