02-11-203, 204 & 205-CR COR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00205-CR

 

 









 
 
 Gerardo
 Tomas Rivas
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From Criminal District
 Court No. 4
  
 of
 Tarrant County (1137004D)
  
 November
 15, 2012
  
 Opinion
 by Justice McCoy
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

 

By_________________________________

   
Justice Bob McCoy








 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00203-CR

NO. 02-11-00204-CR

NO. 02-11-00205-CR

 

 


 
 
 Gerardo Tomas Rivas
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 4 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.    
Introduction

In
three points, Appellant Gerardo Tomas Rivas appeals the trial court’s denial of
his motion to suppress and resulting revocation of his deferred adjudication
community supervision in three cases.  We affirm.

II.  
Factual and Procedural Background

On
October 30, 2009, the trial court entered orders of deferred adjudication after
Rivas made open pleas of guilty to possession with intent to deliver a
controlled substance (cocaine) of one gram or more, but less than four grams;
possession of a controlled substance (psilocin) of 400 grams or more; and
possession with intent to deliver a controlled substance (hydrocodone) of twenty-eight
grams or more, but less than 200 grams.

Less
than a year later, on September 27, 2010, Rivas was detained for new drug
offenses.  The State petitioned to proceed to adjudication, alleging that Rivas
had violated the terms and conditions of his community supervision by
intentionally or knowingly possessing with intent to deliver two controlled
substances:  400 grams or more of psilocin and four grams or more but less than
400 grams of tetrahydrocannabinol.  Rivas pleaded not true to the State’s
allegations.

At
the hearing on the State’s motion, Officer J.C. Williams of the Fort Worth Police
Department narcotics unit testified that on September 27, 2010, he had applied
for a search warrant for 14605 Chimney Meadow #226, Fort Worth.  While Officer
Williams was obtaining the warrant, several other officers in the narcotics
unit set up surveillance of 14605 Chimney Meadow.

In his affidavit supporting the application for a search
warrant to search Rivas’s apartment for marijuana and mushrooms, Officer
Williams stated that on or around September 27, 2010—the same day that the
warrant was issued and executed—a white male known as “Jerry”—“about 6’0”, 300
lbs, approximately 45-50 years old, and known as ‘Gerardo Rivas’”—was
unlawfully possessing mushrooms and marijuana at 14605 Chimney Meadow Street,
in the City of Fort Worth, Tarrant County, State of Texas, at the Centre Oaks
Apartments, in apartment #226.  In his affidavit, Officer Williams described
the target building and further stated, in pertinent part, the following facts
and circumstances supporting his application as:

2.   
That
on or about the 27th day of September, 2010, your affiant, along
with other Officers of the Fort Worth Narcotic Unit continued an investigation
of illegal mushrooms containing psilocybin sales from a subject identified as
Andrew Munchrath W/M 2/15/92.

3.   
That
on the 27th day of September, 2010, your affiant and Officer Vanwey
#3557 were acting in undercover capacity, driving an unmarked car.  Officer
Vanwey and your affiant had previously negotiated to buy 2½ lbs of mushrooms
from Munchrath in exchange for $5,000.00 of US Currency during a previous
encounter.  At approximately 1400 hours, Munchrath called your affiant and
Officer Vanwey and told us that he had the 2½ lbs of mushrooms and to meet him
at 3861 S Cooper St at the AMC Theatre parking lot to buy them.  We pulled up to
this location and met with Munchrath.  As Officer Vanwey met with Munchrath, he
pulled out two plastic baggies containing mushrooms, which by smell and look
are believed to contain psilocybin, in order to sell them to Officer Vanwey. 
As he did, Officer Vanwey gave the pre-determined arrest signal.  We observed
the arrest procedure and positively identified Narcotics Officers arresting
Munchrath, and that he was the same person that sold us the mushrooms that are
believed to contain psilocybin.  Munchrath was arrested for Del C/S PG1 >400
GM.

4.   
That
after Munchrath was arrested, Officer White read Munchrath his Miranda Rights
and began to interview him.  During the interview, Munchrath told Officer White
that he picked up the 2½ lbs of mushrooms from a W/M named Jerry while
Munchrath was at work.  This information was also confirmed by your affiant
during the previously mentioned undercover operation.  Munchrath told Officer
White that Jerry lived at the Centre Oaks Apartments.  Munchrath said that
approximately 3-4 weeks ago, Munchrath observed a large amount of mushrooms and
marijuana, and cocaine in Jerry’s apartment.  Munchrath said that when picking
up the mushrooms from Jerry for this deal, Jerry told him that he had 8 lbs of
mushrooms and 1 lb of marijuana at his apartment right now, but that he was
selling the rest to another buyer.

5.   
That
once this interview was concluded, Officer Christensen #3523 drove Munchrath by
this apartment complex.  While at this apartment complex, Munchrath pointed out
and showed Officers the exact apartment complex and apartment residence that
Jerry lives in, which was apartment #226 at 14605 Chimney Meadow St. at the
Centre Oaks Apartment.

6.   
That
on the 27th day of September 2010, Officer HD Cussnick #2587,
arrived with his NNDDA certified K-9 partner Kelev.  Kelev conducted an open
air sniff on the front door and alerted to the presence of narcotic odors from
the residence.

The
officers had a physical description of Jerry and of his vehicle, a light or
white-colored Lexus.  After Officer Williams returned with the warrant, saw a
white Lexus arrive at the apartment complex, and saw a white male—Rivas—who
matched Jerry’s physical description exit the vehicle and walk up to the target
apartment, police officers detained Rivas and informed him that they had a search
warrant for his apartment.

At
the revocation hearing, Rivas objected to evidence of the search of the
property, arguing that the search warrant was wholly lacking in probable cause.
 The trial court carried the motion and continued with the hearing.

Officer
Williams then testified about his search of Rivas’s one-bedroom apartment,
where police discovered a bag of Xanax, checks and bank documents bearing
Rivas’s name and the apartment’s address, several bags of mushrooms, around
$6,000 in cash, several glass jars containing what the police believed to be
marijuana, and some bags containing what they believed to be other drugs.  Fort
Worth Crime Lab forensic scientist Yin Zhang testified that she performed the
analysis on the items recovered from Rivas’s apartment, identifying 2,555.015
grams of mushrooms containing psilocin in one bag and 561.06 grams of mushrooms
containing psilocin in another, and 9.12 grams of marijuana.

Officer
Steve Smith, another member of the narcotics unit, testified that he assisted
in executing the search warrant after assisting in surveillance of Rivas’s
apartment prior to the warrant’s arrival.  Officer Smith interviewed Rivas in a
patrol car after giving him his Miranda warnings.  The interview was
audio-recorded, and Officer Smith said that Rivas indicated that he understood
his rights.  Officer Smith stated that he did not make any threats or promises
to Rivas to obtain his statement.  After Officer Smith testified that Rivas
told him that police would find marijuana and mushrooms in his apartment—specifically,
in a closet in his bedroom—Rivas objected, arguing that his statement was
involuntary and that promises had been made to him to obtain his statement.

The
trial court ultimately denied Rivas’s motion to suppress, found the State’s
allegations true, adjudicated Rivas guilty in each of the cases, and assessed
twelve years’ confinement in each, to be served concurrently.  These appeals
followed.

III. 
Suppression

In
his first point, Rivas complains that the trial court erred by denying his
motion to suppress because the search warrant did not state probable cause in
that the affidavit did not allege that the informant was credible and reliable and
the police did not corroborate the informant’s information and the facts
contained in the affidavit were stale.  In his second point, Rivas asserts that
the warrant was a general warrant.

A.  Warrant

1. 
Standard of Review

While
we normally review a trial court’s ruling on a motion to suppress by using a
bifurcated standard of review, under which we give almost total deference to
the historical facts found by the trial court and review de novo the trial
court’s application of the law, when the trial court is determining probable
cause to support the issuance of a search warrant, there are no credibility
determinations.  State v. McLain,
337 S.W.3d 268, 271 (Tex. Crim. App. 2011).  Instead, the trial court is
constrained to the four corners of the affidavit.  Id. (citing Hankins
v. State, 132 S.W.3d 380, 388 (Tex. Crim. App.), cert. denied, 543
U.S. 944 (2004)).  Accordingly, when reviewing a magistrate’s probable cause
determination, we apply the deferential standard of review articulated by the
United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 103 S.
Ct. 2317 (1983).  Swearingen v. State, 143 S.W.3d 808, 811 (Tex. Crim.
App. 2004).  Under that standard, we uphold the probable cause determination
“so long as the magistrate had a ‘substantial basis for . . .
conclud[ing]’ that a search would uncover evidence of wrongdoing.”  Gates,
462 U.S. at 236, 103 S. Ct. at 2331 (quoting Jones v. United States,
362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), overruled on other
grounds by United States v. Salvucci, 448 U.S. 83, 100 S. Ct. 2547
(1980)); see Swearingen, 143 S.W.3d at 811; see also McLain, 337
S.W.3d at 271; Flores v. State, 319 S.W.3d 697, 702 (Tex. Crim. App.
2010).

Further,
we may not analyze the affidavit in a hyper-technical manner; rather, we must
interpret the affidavit “in a commonsensical and realistic manner, recognizing
that the magistrate may draw reasonable inferences.  When in doubt, we defer to
all reasonable inferences that the magistrate could have made.”  McClain,
337 S.W.3d at 271.  Probable cause exists when, under the totality of the circumstances,
there is a fair probability that contraband or evidence of a crime will be
found at the specified location, and the facts stated in a search affidavit
“must be so closely related to the time of the issuance of the warrant that a
finding of probable cause is justified.”  Id. at 272.  “The focus is not
on what other facts could or should have been included in the affidavit; the
focus is on the combined logical force of facts that are in the affidavit.”  State
v. Duarte, No. PD-1511-11, 2012 WL 3965824, at *4 (Tex. Crim. App. Sept.
12, 2012).

2.  Analysis

During
the hearing, Rivas went paragraph by paragraph through the affidavit before
making the following critique of the sixth paragraph, which pertains to the K-9
officer’s alert:

They tried to corroborate it with
something called NNDDA.  The courts have said that the use of acronyms or
whatever that is should be frowned upon because I bet you that a detached,
neutral magistrate, like some of the people here in this courthouse, would not
know what NNDDA means.  But it is NNDDA, certified canine partner; whatever
that is.  And then it said he did an open air sniff at the front door and
alerted to the presence of narcotics odors from the residence.

There can be legal narcotics. 
Anything that puts you to sleep is kind of what a narcotic is.  It’s not—it
doesn’t allege it’s an illegal narcotic.  It says, it’s coming from the
residence, but I’m sure the dog alerted on the front door, which might suggest
it has been outside of the house.

Rivas then stated his argument as follows:

So the 4th Amendment
objection that I have and Article 1, Section 9 of the State’s Constitution
objection is that—that is, number one, it’s arguably stale.  There’s no
basis for the information from Munchrath except to say that he had been there. 
But then under Spinelli, there’s no credibility for Munchrath.  He’s a
criminal.  He’s the guy that’s selling the dope on the streets and he’s trying
to flip the attention away from him to somebody else.  So I don’t think he’s
credible in that sense, Your Honor.

So they very easily could have written
this a little bit more craftily.  Or maybe they did write it very craftily,
it’s hard to say, but they didn’t do anything to corroborate Jerry. 
They didn’t put anything in here that Jerry drove a white Lexus, that Jerry
worked at the health food store in Dallas.  Nothing to say about anything that
they found out about Jerry, so there’s no credibility to the field informant,
Your Honor.

For those reasons, I think the warrant
wholly fails; is not supported by probable cause, Your Honor.

[Emphasis
added.]  In his reply to the State’s response at the hearing, Rivas again
concluded with “[I]t’s our position that under Aguilar and Spinelli and Gates,
Illinois, that there’s no credibility and that the conclusions they make are
without corroboration.”

Probable
cause to support the issuance of a search warrant exists when the facts
submitted to the magistrate are sufficient to justify a conclusion that the
object of the search is probably on the premises to be searched at the time the
warrant is issued.  Romo v. State, 315 S.W.3d 565, 573 (Tex. App.—Fort
Worth 2010, pet. ref’d).  An alert by a drug-detection dog outside a person’s
residence is sufficient to provide probable cause for a warrant to search the
site.  Id. at 573–74; see also Rodriguez v. State, 106 S.W.3d
224, 229 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (stating that “[w]hen
a trained and certified narcotics dog alerts an officer to apparent evidence or
contraband, probable cause exists” to obtain a search warrant), cert. denied,
540 U.S. 1189 (2004).

The
affidavit in support of the warrant, in addition to the information describing
the apartment, stated that an officer “arrived with his NNDDA certified K-9
partner Kelev.  Kelev conducted an open air sniff on the front door and alerted
to the presence of narcotic odors from the residence.”  To accord the
magistrate appropriate deference and to allow for any reasonably available
inferences, we conclude that the magistrate had a substantial basis for
concluding that the search would uncover contraband.  Notwithstanding the
additional information provided to the police by Munchrath, it was not
unreasonable for the magistrate to conclude that a “K-9” who conducted an “open
air sniff” was trained to detect the smell of narcotics and that, from the
K-9’s “alert,” the dog had experience with the odor-causing agent, even if the
magistrate did not know that “NNDDA” is an acronym for National Narcotic
Detector Dog Association.  See Skaggs v. State, No. 11-10-00273-CR, 2012
WL 4849136, at *3 (Tex. App.—Eastland Oct. 11, 2012, no pet. h.) (mem. op., not
designated for publication) (concluding that the magistrate could reasonably
infer that the K-9 was trained to detect the smell of narcotics and had experience
with the odor-causing agent based on statement in the affidavit that “Brown
County Sheriff’s Deputy James Stroope with his K-9 Izzy conducted an open air
sniff of the outside of the travel trailer.  K-9 Izzy made positive alerts at
the southeast entrance door to the travel trailer.”); see also $43,774.00
U.S. Currency v. State, 266 S.W.3d 178, 185 (Tex. App.—Texarkana 2008, pet.
denied) (reciting that dog who alerted to the odor of contraband was certified
by the National Narcotic Detector Dog Association); Elersic v. State,
No. 06-98-00208-CR, 1999 WL 486011, at *11 (Tex. App.—Texarkana July 13, 1999,
pet. ref’d) (op. on reh’g) (not designated for publication) (same); Leslie A.
Lunney, Has the Fourth Amendment Gone to the Dogs?:  Unreasonable Expansion
of Canine Sniff Doctrine to Include Sniffs of the Home, 88 Or. L. Rev. 829,
835–36 (2009) (“[P]rivate vendors such as the U.S. Police Canine Association
(USPCA), the National Narcotic Detector Dog Association (NNDDA), and the
American Working Dog Association (AWDA) offer training classes for canine
handlers, as well as certification of drug-detection dogs, based on each
association’s own internally generated certification standards.”).  Kelev’s alert
provided sufficient probable cause to support the affidavit.[2] 
See Romo, 315 S.W.3d at 573–74.

Further,
although Rivas argues that the facts stated in the affidavit were stale, Kelev
alerted to Rivas’s front door on the same day that the warrant was obtained and
executed.  See McKissick v. State, 209 S.W.3d 205, 214 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d) (stating that the facts set out in
an affidavit supporting a warrant must not have become stale when the search
warrant issues).  Because this fact was not stale and was sufficient to support
probable cause to issue the warrant, we overrule Rivas’s first point without needing
to reach his complaints about the informant’s credibility or about any
additional corroboration.  See Tex. R. App. P. 47.1.

And although Rivas complains in his second point
that the search warrant was a “general warrant” prohibited by the federal and
state constitutions, the State has pointed out that Rivas did not raise this
complaint in the trial court, and the record bears this out.  To preserve a
complaint for our review, a party must have presented to the trial court a
timely request, objection, or motion that states the specific grounds for the
desired ruling if they are not apparent from the context of the request,
objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill v. State, 319
S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  A reviewing court should not
address the merits of an issue that has not been preserved for appeal.  Wilson
v. State, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh’g). 
Because Rivas has not preserved this complaint for our review, we overrule his
second point.[3]

B. 
Statement

In his third point, Rivas argues that
his recorded statement, State’s Exhibit 19, was not voluntary because it was
intentionally induced by promises made by the interviewing officer.  However, although
Rivas complains that his statement was involuntary, Rivas did not initially object
when the officer who took his statement testified at the hearing that Rivas had
told him that the police would find marijuana and mushrooms in the closet of
his bedroom.  See Tex. R. App. P. 33.1(a)(1); Lovill, 319 S.W.3d
at 691–92.

Further, the other evidence presented at the
hearing—particularly Officer Williams’s testimony about recovering the drugs
and bank documents bearing Rivas’s name and the apartment’s address from the
one-bedroom apartment—was sufficient even without the recorded statement, under
the preponderance standard applicable to revocation proceedings, to support the
trial court’s finding that Rivas had violated the terms and conditions of his
deferred adjudication community supervision by intentionally or knowingly
possessing the quantities of marijuana and mushrooms alleged in the State’s
petition to revoke.  See Cherry v. State, 215 S.W.3d 917, 919 (Tex.
App.—Fort Worth 2007, pet. ref’d).  Thus, even if Rivas had timely objected to
the officer’s initial testimony, we would not need to reach the trial court’s denial
of Rivas’s objection to the recorded statement because the error, if any, was
ultimately harmless.  See Tex. R. App. 44.2, 47.1.  We overrule Rivas’s
third point.

IV.
 Conclusion

Having
overruled Rivas’s three points, we affirm the trial court’s judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and MEIER, JJ.

 

GARDNER.
J., concurs without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November 15,
2012









[1]See Tex. R. App. P. 47.4.





[2]In his appellate brief,
Rivas now argues that the paragraph of the affidavit involving the drug dog
sniff is broad, vague, and does not establish K-9 partner Kelev’s credibility. 
He further argues that the fact that Kelev was a dog “must be a reasonable
inference the magistrate had to draw,” and that there is no indication of the
skills, if any, that Kelev was certified for.  And he argues that the affidavit
failed to inform the magistrate of what NNDDA stands for, what it certifies,
what front door was sniffed, or whether the alert was to the presence of
illegal narcotics.  However, these were not the ultimate bases for his
objection at the hearing, and based on the four corners of the affidavit, the
magistrate could have drawn these reasonable inferences based on the combined
logical force of facts set out in the affidavit.  See Duarte, 2012
WL 3965824, at *4; McLain, 337 S.W.3d at 271–72.





[3]Further, although Rivas essentially
asserts that the warrant and supporting affidavit constitute an improper “cut
and paste” job containing surplusage in some parts and a lack of detail in
other parts, it still contained a particularized description of the exact
location of the place to be searched and the objects and person to be seized in
connection with the search, as required by the Fourth Amendment.  See Andresen
v. Maryland, 427 U.S. 463, 480, 96 S. Ct. 2737, 2748 (1976); see also
Gonzales v. State, 577 S.W.2d 226, 228 (Tex. Crim. App.). cert.
denied, 444 U.S. 853 (1979).  And Rivas does not point us to specific
evidence seized pursuant to an improper general description and offered into
evidence.  See Rodgers v. State, 162 S.W.3d 698, 709–10 (Tex.
App.—Texarkana 2005) (stating that an appellant, when alleging that a general
warrant was issued, must point to specific evidence seized pursuant to the
complained-of paragraph and offered into evidence in order to preserve his
claim for review), aff’d, 205 S.W.3d 525 (Tex. Crim. App. 2006).