

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NOS. 2-09-153-CR
2-09-154-CR
2-09-155-CR

ROBERT ROMO                                                APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

### I.  Introduction

In four points, Appellant Robert Romo appeals his three convictions for possession of a controlled substance in a drug-free zone.  We affirm.

### II.  Factual and Procedural History

In 2007, during the third week of January, Carrollton Police narcotics investigator Travis Putman received a tip from a confidential informant that

Romo was dealing a large volume of marihuana at a specific house, 2024 Topaz Drive, Carrollton, Texas,[1] and that Romo drove a white Honda Accord. Investigator Putman ran Romo's name through the Texas driver's license database, and it revealed that 2024 Topaz Drive was Romo's home address.

On February 5, 2007, Investigator Putman drove by 2024 Topaz Drive, saw a white Honda Accord in the driveway, and ran the Accord's license plate—it was registered to Romo. The next day, he, Carrollton Police Officer King, and Rocky (a trained narcotics detecting canine) went to the house around 6 a.m. intending to conduct a canine drug sniff; they left when they saw vehicles there, including the white Honda Accord. They returned around 10:30 a.m., noted that the vehicles were gone, and approached the house through the public alleyway.[2] After Rocky alerted twice to the presence of an illegal drug odor from the house's backyard fence and the officers saw what appeared to be marihuana in garbage bags through the slats in the fence, Investigator Putman sought a search warrant. Other officers arrived at the

---

[1] ... 2024 Topaz Drive is approximately 270 feet from a middle school.

[2] ... Investigator Putman described the driveway of 2024 Topaz Drive as an open driveway backing up to a public alleyway. Carrollton Police Officer Edward Teniente described the driveway as located in the rear of the house. Along the driveway were gas meters accessible by the alleyway.

scene while Investigator Putman obtained the warrant; when Romo returned to the house, these officers detained him as soon as the warrant was issued.

The pertinent portion of the affidavit submitted in support of the warrant application states:

> On or about the third week of January 2007, your Affiant received information from an informant who had not yet been made credible that Robert Romo was a large volume marihuana dealer that lived at 2024 Topaz Drive, in Carrollton. The informant also advised your Affiant that Robert Romo drove a white Honda Accord.
>
> Your Affiant searched the Texas Department of Public Safety records, and located a Robert Earl Romo, with a date of birth of 11-26-1970, and an address of 2024 Topaz Drive, Carrollton, Texas.
>
> On February 5th, 2007, your Affiant drove by the suspect location, and observed a white Honda Accord, with Texas registration "J43-FZF", parked in the driveway located behind the suspect location. The registration showed the vehicle to be registered to a Robert Romo.
>
> On February 6th, 2007, at approximately 1030, your Affiant, Canine Officer King #734, and Canine Rocky, a trained narcotics detecting canine, went to the suspect location. Canine Rocky conducted a free air sniff of the garage door and backyard fence of the suspect location. The suspect location's driveway, garage door, and backyard fence is located in the rear of the residence, is accessible by a public alleyway, and is not enclosed by any fencing or barrier that would prevent access by the public. Canine Rocky alerted two separate times to the presence of the odor of an illegal drug on the wooden fence's gate, approximately two feet south of where the wooden fence connects to the garage. After the second alert, your Affiant and Officer King looked through a hole in the wooden fence at the location where Canine Rocky alerted. The hole that King and your Affiant looked through was there prior to the Officer[s] arrival, and did not require the Officers to manipulate

3

it in any manner in order for them to see in the backyard. Both King and your Affiant observed several black trash bags in the backyard of the suspect place. The trash bags, which were approximately one to four feet from the fence, all appeared to be full. King and your Affiant observed a green leafy substance sticking out of one of the bags. Both King and your Affiant observed that the green leafy substance had the same color, consistency, and texture of marihuana.

Among other items admitted in evidence, the trial court admitted photographs of 2024 Topaz Drive's driveway, of the backyard fence, and of the view through the fence slats of black garbage bags—one of which had what Investigator Putman described as a hard brick form of marihuana poking out of it.

After they obtained the search warrant, the officers found four trash bags containing approximately eighty pounds of marihuana—a street value of approximately $70,000—in Romo's backyard. In Romo's garage, they found, among other things, a handgun, a plastic vacuum sealer machine, a digital scale, a grinder, a pipe, a psilocybin mushroom, and more marihuana. In Romo's house, they found, among other things, methamphetamine, marihuana, and plastic baggies.

Romo was charged with possession of the following controlled substances within 1,000 feet of a middle school: psilocin (a mushroom), in the amount of more than one gram but less than four grams; methamphetamine,

4

in the amount of less than one gram; and marihuana, in the amount of 2,000 pounds or less but more than fifty pounds.[3]

Romo moved to suppress this evidence, and the trial court denied the motion.[4] A jury found Romo guilty of all three charges and sentenced him to seven years' confinement and a $10,000 fine for possession of the psilocin; five years' confinement and a $2,000 fine for possession of the methamphetamine; and twenty years' confinement and a $20,000 fine for possession of the marihuana, to run concurrently. This appeal followed.

---

[3] *See* Tex. Health & Safety Code Ann. § 481.102(6) (Vernon Supp. 2009) (stating that penalty group 1 includes methamphetamine); *id.* § 481.103(a)(1) (stating that penalty group 2 includes psilocin); *id.* § 481.115(b) (stating that possession of less than one gram of a penalty group 1 substance is a state jail felony); *id.* § 481.116(c) (stating that possession of more than one gram but less than four grams of a penalty group 2 substance is a third degree felony); *id.* § 481.121(b)(5) (stating that the offense of possession of marihuana is a second degree felony if the amount possessed is 2,000 pounds or less but more than 50 pounds); *id.* § 481.134 (enhancing the punishment for committing possession offenses in, on, or within 1,000 feet of the premises of a school).

[4] During the suppression hearing held during the trial of this case, the trial court took judicial notice of the earlier proceedings in this case prior to its dismissal and reindictment, including a motion to suppress filed on October 4, 2007, and a suppression hearing held on the same day. The trial court in the earlier case took judicial notice of the affidavit at the hearing and denied the motion based on the affidavit. It filed written findings of fact and conclusions of law stating that Romo failed to properly challenge probable cause for the search warrant and to raise any challenge to the truthfulness or accuracy of the officer's statements in the affidavit and that probable cause existed and the search was proper.

### III. Suppression

In his first two points, Romo complains that the trial court erred by overruling his motion to suppress because the drugs (1) "were the fruits of and seized as a direct result of the search" in violation of the Fourth and Fourteenth Amendments and (2) were seized in violation of article 1, section 9 of the Texas constitution and article 38.23 of the code of criminal procedure. In his third point, he complains that the trial court erred by overruling his motion to suppress because the search warrant's supporting affidavit failed to state probable cause and to meet the requirements for a valid affidavit under the code of criminal procedure and the United States and Texas Constitutions.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853,

855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact

findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 818.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

In assessing the sufficiency of an affidavit for an arrest or a search warrant, the reviewing court is limited to the four corners of the affidavit. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App.), *cert. denied*, 543 U.S. 944 (2004); *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App.

8

1992), *cert. denied*, 507 U.S. 921 (1993).  The reviewing court should interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences.  *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006); *Hankins*, 132 S.W.3d at 388. Unconstitutional portions of a search warrant do not necessarily invalidate the entire warrant or taint all of the evidence seized pursuant to the warrant. *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996).  If only certain portions of a search warrant are invalid, only the evidence gathered pursuant to the offending portions is tainted.  *Id.*

B.  Analysis

The essence of Romo's argument in his first two points is that an illegal search occurred when the drug dog sniffed his garage and backyard fence and the police officers peered into his backyard through an opening in the fence and saw what appeared to be marihuana.  He concedes that an illegal search did not occur when the police officers "first looked at his garage" because that area "was obviously open for visual inspection from the alley."[5]  Instead, he

_____

[5] Romo did not have a reasonable expectation of privacy in his open driveway area and no Fourth Amendment right was violated by the officers when they approached the rear of the house through this area because "[a]reas around a home that are readily accessible, such as driveways . . . are not accorded the same degree of Fourth Amendment protection as is the interior of a residence."  *Rodriguez v. State*, 106 S.W.3d 224, 228 (Tex. App.—Houston

complains that the marihuana in the backyard was not knowingly exposed to public view, and that "[u]nder any analysis, an illegal search took place and the resulting information used in the affidavit to secure a search warrant later that same morning was obviously the fruits of the illegal search."

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 180 S. Ct. 1015 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. at 672–73; *Torres v.*

---

[1st Dist.] 2003, pet. ref'd), *cert. denied*, 540 U.S. 1189 (2004). Nothing in the record indicates that Romo displayed any "no trespassing" signs or other evidence indicating that he wished to keep people off his property, and as previously articulated, the back driveway of the home was not enclosed, was open to the alleyway at the rear of the house, and gas meters were located on the driveway.

10

*State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best*, 118 S.W.3d at 862.

However, before we reach reasonableness, we must first determine whether a search even occurred. Our sister court has held that a dog sniff of a front door is not a search. *See Rodriguez*, 106 S.W.3d at 228–29 (holding that appellant did not have a reasonable expectation of privacy outside his home where the drug dog sniffed because the front door area was not enclosed, it was used as a main entrance to the house, and it was not protected from observation by passersby); *see also Smith v. State*, No. 01-02-00503-CR, 2004 WL 213395, at *3 (Tex. App.—Houston [1st Dist.] Feb. 5, 2004, pet. ref'd) (mem. op., not designated for publication) (holding that

11

appellant's privacy interests under the U.S. and Texas Constitutions were not invaded when officer walked up appellant's driveway to allow drug dog to sniff appellant's garage door), *cert. denied*, 544 U.S. 961 (2005). The *Rodriguez* court reasoned that because a dog sniff discloses only the presence or absence of narcotics, in which there is no reasonable expectation of privacy,[6] and does not expose noncontraband items, activity, or information that would otherwise remain hidden from public view, it does not intrude on a legitimate expectation of privacy and is thus not a "search" for Fourth Amendment purposes. 106 S.W.3d at 228–29; *see also Porter v. State*, 93 S.W.3d 342, 346–47 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding same). We agree with this reasoning and conclude that Rocky's sniffs of the garage door and the backyard fence were not searches under the Fourth Amendment or the Texas constitution because he sniffed areas that were not protected from observation

---

[6] The *Rodriguez* court states, "There is no legitimate expectation or interest in 'privately' possessing an illegal narcotic." 106 S.W.3d at 229; *see Wilson v. State*, 98 S.W.3d 265, 272–73 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that a dog sniff of the area outside the door of a hotel room is not a search under the Fourth Amendment or the Texas constitution because the dog's sniff does not explore the details of the hotel room and the sniff reveals nothing about the room other than the presence of cocaine, in which there is no legitimate privacy interest); *see also United States v. Jacobsen*, 466 U.S. 109, 122, 104 S. Ct. 1652, 1661 (1984) ("The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities.").

12

by passersby and because Romo had no reasonable expectation of privacy in the odor of marihuana coming from his backyard.

Furthermore, we need not address whether the officers peeking through the fence after Rocky alerted twice constituted a search,[7] because probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). An alert by a drug-detection dog outside a person's residence is sufficient to provide probable cause to search the site. *See Stauffer v. State*, No. 14-03-00193-CR, 2004 WL 253520, at *3 (Tex. App.—Houston [14th

---

[7] ... And although Romo argues in his third point that the search warrant and affidavit failed to state probable cause because the supporting affidavit: (1) "failed to set out any facts which would justify a search of the inside of the house," (2) "failed to state probable cause to search at the exact address of 2024 Topaz Drive, Carrollton, Denton County, Texas named in the search warrant," (3) is stale and "[n]o specific dates at all [were] given for the allegations concerning 'what an informant not yet made credible' said to the Affiant," (4) "does not state probable cause to believe that a crime was being committed by any particular person," and (5) does not describe or state anything about the quantity of marihuana seen in Romo's backyard, he did not raise the first, second, fourth, and fifth sub-points in either his October 2007 or April 2009 motions to suppress or during the hearings on these motions. These four sub-points have not been preserved. *See* Tex. R. App. P. 33.1. Based on our discussion below, we also need not discuss his third sub-point. *See* Tex. R. App. P. 47.1.

13

Dist.] Feb. 12, 2004, pet. ref'd) (not designated for publication) (relying on *Rodriguez* and holding that drug dog's alert outside the garage area of the home provided probable cause to search), *cert. denied*, 543 U.S. 1151 (2005); *Smith*, 2004 WL 213395, at *5 ("Because the drug-dog's positive alert for drugs was alone sufficient to establish probable cause for the search, we need not address the other allegations stated in the affidavit.") (citation omitted); *Porter v. State*, Nos. 14-01-00687-CR, 14-01-00688-CR, 2002 WL 1488983, at *3 (Tex. App.—Houston [14th Dist.] July 11, 2002, pet. ref'd) (not designated for publication) (reciting that a canine sniff is not a search under the Fourth Amendment or under article I, section 9 of the Texas constitution, and that a trained canine's alert is sufficient to provide probable cause for a search). The affidavit in support of the search warrant specifically set out that Rocky alerted two separate times to the backyard fence. Therefore, without considering Investigator Putman's statements about seeing the marihuana through the fence slats, or whether the tip provided by the confidential informant was "stale" because it was over a week old, the affidavit contained sufficient information to support a determination of probable cause. *See Massey*, 933 S.W.2d at 148.

Additionally, besides reporting Rocky's two alerts, the affidavit was supported by other facts recited prior to Investigator Putman's statements

14

about what he saw by looking through the fence slats. That is, Investigator Putman recited that, during the third week of January 2007, a confidential informant gave him information that Romo was a large volume marihuana dealer that lived at 2024 Topaz Drive in Carrollton and drove a white Honda Accord. He then verified these facts before he and Officer King approached the house and Rocky sniffed the fence. *See Richardson v. State*, No. 01-04-00833-CR, 2006 WL 488661, at *4–5 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (mem. op., not designated for publication) (concluding that the affidavit alleged sufficient information for probable cause to justify issuing warrant when it was based on informant's tip, subsequent corroboration of the information in the tip, and drug dog alerted at the front and back doors of appellant's home); *Blackburn v. State*, No. 02-02-00158-CR, 2003 WL 22311253, at *2–3 (Tex. App.—Fort Worth Oct. 9, 2003, pet. ref'd) (mem. op., not designated for publication) (concluding that affidavit alleged sufficient information for probable cause to justify issuing warrant when it was based on informant's tip, subsequent corroboration of the information in the tip, and drug dog alerted to appellant's storage unit). We overrule Romo's first three points.

## IV. Jury Charge

In his final point, Romo argues that the trial court erred by overruling his request for special issues to be presented to the jury. Specifically, he contends

15

that the trial court should have included the following special issues to the jury: "(1) Was the Carrollton Police Department on the residence property of Robert Romo prior to the judge signing the warrant?" and "(2) Do you find the evidence seized on the residence property of Robert Romo was the result of the search that started without a warrant?" The State responds that the requested issues were improper because there was no disputed fact issue for the jury to determine.

Although Romo did not specifically request an article 38.23 instruction, this section governs our analysis. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005); *see also Oursbourn v. State*, 259 S.W.3d 159, 181 & n.85 (Tex. Crim. App. 2008) (requiring 38.23 instruction as law applicable to the case if there is a disputed fact issue). Under article 38.23, no evidence obtained in violation of the federal or state constitutions or laws may be admitted in evidence against the accused. Tex. Code Crim. Proc Ann. art. 38.23. When the evidence raises an issue regarding a violation, the jury must be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the law, it must disregard the illegally obtained evidence. *Id.*

A defendant's right to the submission of a jury instruction under article 38.23 is limited to disputed issues of fact that are material to his claim of a

16

constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007); *see also Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008) ("There is, of course, nothing to instruct the jury about if the suppression question is one of law only, and there is nothing to instruct the jury about unless there is affirmative evidence that raises a contested fact issue."). To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Madden*, 242 S.W.3d at 513. If there is no dispute regarding the factual basis for the challenged search or seizure, then the legality of the conduct is determined by the trial judge alone—as a question of law—and a jury instruction is inappropriate. *Id.* at 510. "The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct." *Id.* at 511.

Here, the first requested issue would have asked the jury whether the officers were on the "residence property of Robert Romo prior to the judge signing the warrant[.]" However, it was undisputed that Investigator Putman, Officer King, and Rocky were on Romo's property prior to obtaining a warrant. Therefore, Romo was not entitled to inclusion in the jury charge of the first requested issue because it did not present an issue of fact that was affirmatively contested. *See id.*

17

The second requested issue would have asked the jury whether the evidence seized on Romo's property was the result of a search that started without a warrant. Again, however, there was no factual dispute about the steps Investigator Putman, Officer King, and Rocky took prior to obtaining a warrant—rather, the legality of their conduct was determined as a question of law by the trial court. *See id.* Therefore, Romo was also not entitled to inclusion in the jury charge of the second requested issue.

We overrule Romo's fourth point.

## V. Conclusion

Having overruled Romo's four points, we affirm the trial court's judgments.

BOB MCCOY
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MCCOY, JJ.

DAUPHINOT, J. concurs without opinion

PUBLISH

DELIVERED: April 8, 2010

18