

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00062-CR

| | | |
|---|---|---|
| Gerardo Tomas Rivas | § | From Criminal District Court No. 4 |
| | § | of Tarrant County (1215971D) |
| v. | § | March 14, 2013 |
| | § | Per Curiam |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00062-CR
### NO. 02-12-00063-CR

GERARDO TOMAS RIVAS                                         APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In three points, Appellant Gerardo Tomas Rivas appeals the trial court's denial of his motion to suppress and resulting convictions for possession of a controlled substance with intent to deliver. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Background

Based on his arrest for possession of the controlled substances in these cases, the State moved to adjudicate Rivas's guilt in three prior drug possession cases. *See Rivas v. State* (*Rivas I*), Nos. 02-11-00203-CR, 02-11-00204-CR, 02-11-00205-CR, 2012 WL 5512450, at *1–2, 5 (Tex. App.—Fort Worth, Nov. 15, 2012, no pet.) (mem. op., not designated for publication). In *Rivas I*, the trial court adjudicated Rivas's guilt, Rivas appealed, and we affirmed the trial court's judgments. *See id.* The background facts are the same here. *See id.*

After conducting a hearing on the State's motion to adjudicate, which included hearing Rivas's motion to suppress, and adjudicating Rivas's guilt in the prior cases, the trial court held another suppression hearing on Rivas's motion to suppress in the instant cases. The trial court took judicial notice of the prior suppression hearing during the hearing on the motion to suppress at issue here.

At this second hearing, Rivas re-urged the arguments he had made in the first hearing and argued that the open-air sniff of his apartment door by a drug-detection dog was insufficient to provide police with probable cause because the affidavit used to obtain the search warrant did not adequately establish the dog's credentials. The trial court ultimately denied Rivas's motion to suppress, Rivas pleaded guilty, and the trial court accepted his pleas and assessed seventeen years' confinement on each count, to be served concurrently. These appeals followed.

### III. Motion to Suppress

### A. Open-Air Dog Sniff

In his first point, Rivas complains that the trial court erred by denying his motion to suppress because the search warrant did not state probable cause. Specifically, he argues that the supporting affidavit did not allege that the informant was credible, the police did not corroborate the informant's information, the facts contained in the affidavit were stale, and the police conducted an illegal open-air dog sniff of Rivas's residence in order to establish probable cause. With the exception of Rivas's argument regarding the illegality of the open-air dog sniff, he raised this same point in *Rivas I*. *See id.* at *3, 5.

In *Rivas I*, we held that the open-air dog sniff was sufficient to establish probable cause, and we did not reach Rivas's complaints about the informant's credibility or corroboration. *See id.* at *5. Here, Rivas argues that the warrantless open-air dog sniff of his apartment door was illegal; however, this court has held otherwise.[2] *See Romo v. State*, 315 S.W.3d 565, 573 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Rodriguez v. State*, 106 S.W.3d 224, 228–29 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd), *cert. denied*, 540 U.S. 1189 (2004), for the proposition that a drug detection dog's sniff of the front door of a defendant's home is legal because there is no reasonable expectation of

---

[2]The issue of whether the warrantless sniff test of a home by a drug detection dog is a search under the Fourth Amendment is currently pending in the United States Supreme Court. *See Jardines v. State*, 73 So.3d 34 (Fla. 2011), *cert. granted*, 132 S. Ct. 995 (2012).

privacy in the area around an unenclosed front door). Thus, we hold that the open-air dog sniff of the front door to Rivas's apartment was legal and, consistent with our holding in *Rivas I*, was sufficient to establish probable cause for the search warrant. *See* 2012 WL 5512450, at *5. We overrule Rivas's first point.

## B. Search Warrant

In his second point, also raised in *Rivas I*, Rivas asserts that the warrant was a general warrant. *See id.* at *6. For the same reasons cited in *Rivas I*, we overrule Rivas's second point. *See id.*

## C. Rivas's Statement to Police

In his third point, Rivas argues that his recorded statement was not voluntarily given because it was intentionally induced by the interviewing officer's promises.

### 1. Preservation

At the suppression hearing in the instant cases, the State introduced the testimony from the prior hearing, in which Fort Worth Police Officer Steve Smith testified to Rivas's statement. In *Rivas I*, we did not reach the question of whether the trial court erred by overruling Rivas's objection to the recorded statement because Rivas did not raise his objection to his recorded statement until after Officer Smith had already testified that Rivas told him the police would find marijuana and mushrooms in his bedroom closet, and because the other evidence gathered under the warrant was sufficient to revoke Rivas's community supervision. *Id.*

5

The State now argues that Rivas has failed to preserve his complaint for this appeal because his statement to the police was not the subject of his argument during the suppression hearing, and Rivas failed to obtain an adverse ruling on the statement's admissibility. *See* Tex. R. App. P. 33.1.

However, in open court, Rivas made an oral motion to suppress that contained the same claims he now makes on appeal. The trial court heard the motion and denied it. Although the trial court did not specifically address Rivas's statement to police in its denial of his motion to suppress, the record indicates that the trial court reviewed the testimony from the prior hearing, which included testimony regarding Rivas's statement, and Rivas brought the issue to the trial court's attention at the beginning of the hearing. Thus, Rivas has preserved this complaint for appeal.[3] *See Black v. State*, 358 S.W.3d 823, 829 (Tex. App.—Fort Worth 2012, pet. ref'd) (holding that a motion to suppress heard by the trial court preserves the issue for appellate review); *see also Sargent v. State*, No. 02-09-00346-CR, 2011 WL 1331856, at *2 (Tex. App.—Fort Worth Apr. 7, 2011, no pet.) (mem. op., not designated for publication) (noting that error is preserved

---

[3]The State further argues that if we find that Rivas preserved his complaint for review, we must abate the case to the trial court for findings of fact and conclusions of law. However, the State's brief was filed before we abated *Rivas I* so that the trial court could make findings of fact and conclusions of law. Because this case involves the same facts and parties as *Rivas I*, we may take judicial notice of the findings of fact and conclusions of law from *Rivas I. See Ex parte Sotelo*, 878 S.W.2d 179, 181 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding that an appellate court may take judicial notice of its own records in related proceedings involving the same parties), *disapproved of on other grounds by Ex parte Anderer*, 61 S.W.3d 398, 405 (Tex. Crim. App. 2001).

when the trial court denies a timely motion to suppress that invokes the same provisions upon which the appellant bases his appellate claims for relief).

### 2. No Error

We review the trial court's ruling on Rivas's motion to suppress his statement under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The statement of an accused may be used in evidence against him provided it was "freely and voluntarily made without compulsion or persuasion." Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). "[F]or a promise to render a confession invalid under Article 38.21, the promise must be positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully." *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004).

The trial court stated in its findings of fact and conclusions of law that Rivas "knowingly, intelligently, and voluntarily agreed to speak with Officer Smith." The trial court further stated that "Officer Smith never made a positive or

7

specific promise that [Rivas] would receive any particular benefit or consideration in exchange for speaking to the officer or making an admission," and noted that Officer Smith never indicated that he had authority to make an offer. Finally, the trial court stated that Officer Smith "never indicated that he had control over any future benefit" and that "Officer Smith made no more than general statements" regarding the potential benefits Rivas might reap from being truthful and admitting what he had done.

The recorded interview begins with Officer Smith advising Rivas of his *Miranda* rights and stating that "[t]here's [sic] ways for us to kind of mitigate your case." Officer Smith stated further:

> For us to get up through the chain of people sometimes, you have to use other people to get there. . . . I have no goal to put you in jail. . . . We have some options to work with. . . . We can talk to parole people, I mean as far as letting you go free today, potentially. . . . I've got to have somebody in your shoes. I've got to be able to justify doing something for you. . . . I don't know what we are going to find in the apartment. If you want to talk about that, we can.

After discussing Rivas's concern for finding someone to care for his pet, Officer Smith asked Rivas, "Do you want to talk about what we might find up there, because I'm sure we're going to find something up there." Rivas indicated that he wanted to talk, and he told Officer Smith about the narcotics that he had in his apartment. Officer Smith then stated, "In order for me to offer you any consideration, okay, I kind of have to know what you can do for us, you know,

8

what you have the ability to do." Rivas asked, "How do I know that the trouble will be a smaller amount if I said something?" Officer Smith replied:

> In order for us to gauge what we're going to offer to you and ultimately what's going to be done, is by what you can provide. I can't tell you . . . we're going to completely let your case go away because I know that you can do this. . . . There's [sic] two goals in allowing somebody to cooperate with us. One is to work up through the food chain. . . . The second is to correct behavior. . . . To answer your question, there's nothing I mean it's a trust aspect, there's nothing I can sit there and tell you because I don't know anything about you, I don't know what your potential is. . . . The best way that I can . . . talk to my sergeant and say, "this is . . . his capability," okay, is the first thing that I need from you is basically your admission that these mushrooms in your apartment are yours. . . . [W]hat we do with anybody we're going to work with is, you got to first admit to what the truth is.

Officer Smith then asked Rivas where police would find the narcotics in his apartment, and Rivas gave him the location. Officer Smith speculated that Rivas must have received the narcotics from someone else, and Rivas confirmed Officer Smith's speculation. Officer Smith then asked Rivas how much he charged for the narcotics he sold, and Rivas told him.

Officer Smith asked Rivas whether he wanted to talk about his supplier and said, "I can't tell you what we can do. . . . We have options to work with; it's all limited to what you tell me." Officer Smith again asked Rivas whether he wanted to talk about his supplier, and Rivas said that he obtained an address from a package that he received from his direct supplier. Rivas then stated that his direct supplier had moved and that he had no other supplier information to offer.

9

Officer Smith then asked Rivas about the prices he charged, the amounts he typically sold, and the customers to whom he had sold. Officer Smith stated, "To help your case out, is there anybody that could have mushrooms in their possession . . . that we could go get . . . . The more drugs we get off the street, the more it helps you out. I'm not telling you that it would let you free today, okay, but everything helps you out." Rivas asked whether he would actually benefit from answering Officer Smith's question, and Officer Smith replied, "If you help us out, we're going to refer that information to your probation officer . . . and we're going to write a letter to the judge and say . . . 'this is what he told us whenever we met with him.'" Officer Smith stated further that "admission alone goes a long way in your favor," and "outside of getting your source, . . . the rest of the stuff is basically going to be consideration given by the judge and by the district attorney's office toward your case."

After Officer Smith told Rivas that the value of his information was insufficient to justify releasing him, Rivas proceeded to offer the names and descriptions of his recent customers. Finally, Officer Smith again explained to Rivas that the identity of his suppliers was more valuable than the identity of his customers and stated that he had no control of the consideration Rivas might receive for the information he provided.

Contrary to Rivas's claim that Officer Smith's statements amounted to promises of leniency, Officer Smith stated only that the department's options for mitigating Rivas's punishment were dependent upon the value of Rivas's

10

information. In fact, when Rivas asked for a guarantee that his statement would reduce his punishment, Officer Smith stated that he could make no such guarantee and disclaimed any authority to give Rivas consideration for his statements, stating that he was only conducting the interview and that he would have to refer Rivas's statements to his sergeant. When Rivas later asked for an assurance that he would indeed benefit from giving Officer Smith the names of his customers, Officer Smith stated that any consideration for Rivas's statements would come from "the judge and the district attorney's office." Indeed, each time he discussed the consideration that Rivas might receive for his statements, Officer Smith deferred to other authorities, including the "parole people," his sergeant, and "the judge and district attorney's office." Thus, Officer Smith's statements made no positive promise of leniency. *See Johnson*, 68 S.W.3d at 654–55 (holding that police made no promise inducing defendant's confession by stating that they would make the defendant's honesty known to the court for its consideration); *Garcia v. State*, 919 S.W.2d 370, 388 (Tex. Crim. App. 1994) (op. on reh'g) (holding that the interviewing officer made no positive promise by telling the defendant that he would talk to the district attorney and see what he could work out); *Padilla v. State*, No. 02-11-00336-CR, 2012 WL 4815506, at *2 (Tex. App.—Fort Worth Oct. 11, 2012, no pet.) (mem. op., not designated for publication) (holding that police did not improperly induce the defendant's confession by indicating that the district attorney may drop the charges); *Wilson v. State*, 348 S.W.3d 32, 39 (Tex. App.—Houston [14th Dist.] 2011) (holding that

11

"the promise to 'call the district attorney and say . . . what really happened' does not create an involuntary confession"), *judgment vacated on other grounds*, 133 S. Ct. 108 (2012); *Herrera v. State*, 194 S.W.3d 656, 659–60 (Tex. App.— Houston [14th Dist.] 2006, pet. ref'd) (holding that police statement to defendant, "[w]e can talk to the D.A., get you an offer, if you can help us," was not an improper inducement); *Mason v. State*, 116 S.W.3d 248, 260 (Tex. App.— Houston [14th Dist.] 2003, pet. ref'd) (holding that an officer's statement that "things would 'go better' for [the defendant] if he cooperated" was not a promise, but a "prediction about future events").

Even assuming that Officer Smith had made a promise of some benefit, he made no unequivocal promise that "would be likely to influence the defendant to speak untruthfully." *Martinez*, 127 S.W.3d at 794; *see Espinosa v. State*, 899 S.W.2d 359, 362–64 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (holding that an officer's statement, "Go ahead and tell us what happened. Everything will be better for you. You will get less time," was insufficient to likely induce a false confession).

Thus we hold that the trial court did not err by considering Rivas's statement because it was "freely and voluntarily made without compulsion or persuasion." *See* Tex. Code Crim. Proc. Ann. art. 38.21. We overrule Rivas's third point.

12

## IV.  Conclusion

Having overruled Rivas's three points, we affirm the trial court's judgments.


PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 14, 2013

13