02-12-062, 063CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00063-CR

 

 









 
 
 Gerardo
 Tomas Rivas
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From Criminal District
 Court No. 4
  
 of
 Tarrant County (1215973D)
  
 March
 14, 2013
  
 Per
 Curiam
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

PER
CURIAM








 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00062-CR

NO. 02-12-00063-CR

 

 


 
 
 Gerardo Tomas Rivas
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 4 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          In
three points, Appellant Gerardo Tomas Rivas appeals the trial court’s denial of
his motion to suppress and resulting convictions for possession of a controlled
substance with intent to deliver.  We affirm.

II.  Background

          Based
on his arrest for possession of the controlled substances in these cases, the
State moved to adjudicate Rivas’s guilt in three prior drug possession cases.  See
Rivas v. State (Rivas I), Nos. 02-11-00203-CR, 02-11-00204-CR,
02-11-00205-CR, 2012 WL 5512450, at *1–2, 5 (Tex. App.—Fort Worth, Nov. 15,
2012, no pet.) (mem. op., not designated for publication).  In Rivas I,
the trial court adjudicated Rivas’s guilt, Rivas appealed, and we affirmed the
trial court’s judgments.  See id.  The background facts are the same
here.  See id.

          After
conducting a hearing on the State’s motion to adjudicate, which included
hearing Rivas’s motion to suppress, and adjudicating Rivas’s guilt in the prior
cases, the trial court held another suppression hearing on Rivas’s motion to
suppress in the instant cases.  The trial court took judicial notice of the
prior suppression hearing during the hearing on the motion to suppress at issue
here.

          At
this second hearing, Rivas re-urged the arguments he had made in the first hearing
and argued that the open-air sniff of his apartment door by a drug-detection
dog was insufficient to provide police with probable cause because the
affidavit used to obtain the search warrant did not adequately establish the
dog’s credentials.  The trial court ultimately denied Rivas’s motion to
suppress, Rivas pleaded guilty, and the trial court accepted his pleas and
assessed seventeen years’ confinement on each count, to be served
concurrently.  These appeals followed.

III.
 Motion to Suppress

A.  Open-Air Dog Sniff

          In
his first point, Rivas complains that the trial court erred by denying his
motion to suppress because the search warrant did not state probable cause.  Specifically,
he argues that the supporting affidavit did not allege that the informant was
credible, the police did not corroborate the informant’s information, the facts
contained in the affidavit were stale, and the police conducted an illegal
open-air dog sniff of Rivas’s residence in order to establish probable cause.  With
the exception of Rivas’s argument regarding the illegality of the open-air dog sniff,
he raised this same point in Rivas I.  See id. at *3, 5.

          In
Rivas I, we held that the open-air dog sniff was sufficient to establish
probable cause, and we did not reach Rivas’s complaints about the informant’s
credibility or corroboration.  See id. at *5.  Here, Rivas argues that
the warrantless open-air dog sniff of his apartment door was illegal; however,
this court has held otherwise.[2]  See Romo v.
State, 315 S.W.3d 565, 573 (Tex. App.—Fort Worth 2010, pet. ref’d) (citing Rodriguez
v. State, 106 S.W.3d 224, 228–29 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d), cert. denied, 540 U.S. 1189 (2004), for the proposition that a drug
detection dog’s sniff of the front door of a defendant’s home is legal because
there is no reasonable expectation of privacy in the area around an unenclosed
front door).  Thus, we hold that the open-air dog sniff of the front door to
Rivas’s apartment was legal and, consistent with our holding in Rivas I,
was sufficient to establish probable cause for the search warrant.  See 2012
WL 5512450, at *5.  We overrule Rivas’s first point.

B.  Search
Warrant

          In
his second point, also raised in Rivas I, Rivas asserts that the warrant
was a general warrant.  See id. at *6.  For the same reasons cited in Rivas
I, we overrule Rivas’s second point.  See id.

C.  Rivas’s
Statement to Police

          In
his third point, Rivas argues that his recorded statement was not voluntarily
given because it was intentionally induced by the interviewing officer’s
promises.

          1.
 Preservation

          At
the suppression hearing in the instant cases, the State introduced the testimony
from the prior hearing, in which Fort Worth Police Officer Steve Smith testified
to Rivas’s statement.  In Rivas I, we did not reach the question of whether
the trial court erred by overruling Rivas’s objection to the recorded statement
because Rivas did not raise his objection to his recorded statement until after
Officer Smith had already testified that Rivas told him the police would find
marijuana and mushrooms in his bedroom closet, and because the other evidence
gathered under the warrant was sufficient to revoke Rivas’s community
supervision.  Id.

          The
State now argues that Rivas has failed to preserve his complaint for this appeal
because his statement to the police was not the subject of his argument during
the suppression hearing, and Rivas failed to obtain an adverse ruling on the statement’s
admissibility.  See Tex. R. App. P. 33.1.

          However,
in open court, Rivas made an oral motion to suppress that contained the same
claims he now makes on appeal.  The trial court heard the motion and denied it. 
Although the trial court did not specifically address Rivas’s statement to
police in its denial of his motion to suppress, the record indicates that the
trial court reviewed the testimony from the prior hearing, which included
testimony regarding Rivas’s statement, and Rivas brought the issue to the trial
court’s attention at the beginning of the hearing.  Thus, Rivas has preserved this
complaint for appeal.[3]  See Black v. State,
358 S.W.3d 823, 829 (Tex. App.—Fort Worth 2012, pet. ref’d) (holding that a motion
to suppress heard by the trial court preserves the issue for appellate review);
see also Sargent v. State, No. 02-09-00346-CR, 2011 WL 1331856, at *2
(Tex. App.—Fort Worth Apr. 7, 2011, no pet.) (mem. op., not designated for
publication) (noting that error is preserved when the trial court denies a
timely motion to suppress that invokes the same provisions upon which the
appellant bases his appellate claims for relief).

          2.
 No Error

          We
review the trial court’s ruling on Rivas’s motion to suppress his statement
under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666,
673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).  We give almost total deference to a trial court’s rulings on
questions of historical fact and application-of-law-to-fact questions that turn
on an evaluation of credibility and demeanor, but we review de novo
application-of-law-to-fact questions that do not turn on credibility and
demeanor.  Amador, 221 S.W.3d at 673; Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State, 68 S.W.3d 644,
652–53 (Tex. Crim. App. 2002).

          The
statement of an accused may be used in evidence against him provided it was
“freely and voluntarily made without compulsion or persuasion.”  Tex. Code
Crim. Proc. Ann. art. 38.21 (West 2005).  “[F]or a promise to render a
confession invalid under Article 38.21, the promise must be positive, made or
sanctioned by someone in authority, and of such an influential nature that it
would cause a defendant to speak untruthfully.”  Martinez v. State, 127
S.W.3d 792, 794 (Tex. Crim. App. 2004).

          The
trial court stated in its findings of fact and conclusions of law that Rivas
“knowingly, intelligently, and voluntarily agreed to speak with Officer
Smith.”  The trial court further stated that “Officer Smith never made a
positive or specific promise that [Rivas] would receive any particular benefit
or consideration in exchange for speaking to the officer or making an
admission,” and noted that Officer Smith never indicated that he had authority
to make an offer.  Finally, the trial court stated that Officer Smith “never indicated
that he had control over any future benefit” and that “Officer Smith made no
more than general statements” regarding the potential benefits Rivas might reap
from being truthful and admitting what he had done.

          The
recorded interview begins with Officer Smith advising Rivas of his Miranda
rights and stating that “[t]here’s [sic] ways for us to kind of mitigate your
case.”  Officer Smith stated further:

For us to get up through the chain of people sometimes,
you have to use other people to get there. . . .  I have no goal to put you in
jail. . . .  We have some options to work with. . . .  We can
talk to parole people, I mean as far as letting you go free today,
potentially. . . .  I’ve got to have somebody in your shoes. 
I’ve got to be able to justify doing something for you. . . .  I don’t know
what we are going to find in the apartment.  If you want to talk about that, we
can.

          After
discussing Rivas’s concern for finding someone to care for his pet, Officer
Smith asked Rivas, “Do you want to talk about what we might find up there,
because I’m sure we’re going to find something up there.”  Rivas indicated that
he wanted to talk, and he told Officer Smith about the narcotics that he had in
his apartment.  Officer Smith then stated, “In order for me to offer you any
consideration, okay, I kind of have to know what you can do for us, you know,
what you have the ability to do.”  Rivas asked, “How do I know that the trouble
will be a smaller amount if I said something?”  Officer Smith replied:

In order for us to gauge what we’re going to offer to you
and ultimately what’s going to be done, is by what you can provide.  I can’t
tell you . . . we’re going to completely let your case go away because I know
that you can do this. . . .  There’s [sic] two goals in allowing somebody to
cooperate with us.  One is to work up through the food chain. . . .  The second
is to correct behavior. . . .  To answer your question, there’s nothing I mean
it’s a trust aspect, there’s nothing I can sit there and tell you because I
don’t know anything about you, I don’t know what your potential is. . . .  The
best way that I can . . . talk to my sergeant and say, “this is . . . his
capability,” okay, is the first thing that I need from you is basically your
admission that these mushrooms in your apartment are yours. . . .  [W]hat we do
with anybody we’re going to work with is, you got to first admit to what the
truth is.

Officer
Smith then asked Rivas where police would find the narcotics in his apartment,
and Rivas gave him the location.  Officer Smith speculated that Rivas must have
received the narcotics from someone else, and Rivas confirmed Officer Smith’s
speculation.  Officer Smith then asked Rivas how much he charged for the
narcotics he sold, and Rivas told him.

          Officer
Smith asked Rivas whether he wanted to talk about his supplier and said, “I
can’t tell you what we can do. . . .  We have options to work with; it’s all
limited to what you tell me.”  Officer Smith again asked Rivas whether he
wanted to talk about his supplier, and Rivas said that he obtained an address
from a package that he received from his direct supplier.  Rivas then stated
that his direct supplier had moved and that he had no other supplier
information to offer.

          Officer
Smith then asked Rivas about the prices he charged, the amounts he typically
sold, and the customers to whom he had sold.  Officer Smith stated, “To help
your case out, is there anybody that could have mushrooms in their possession .
. . that we could go get . . . .  The more drugs we get off the street, the
more it helps you out.  I’m not telling you that it would let you free today,
okay, but everything helps you out.”  Rivas asked whether he would actually
benefit from answering Officer Smith’s question, and Officer Smith replied, “If
you help us out, we’re going to refer that information to your probation
officer . . . and we’re going to write a letter to the judge and say . . .
‘this is what he told us whenever we met with him.’”  Officer Smith stated
further that “admission alone goes a long way in your favor,” and “outside of
getting your source, . . . the rest of the stuff is basically going to be consideration
given by the judge and by the district attorney’s office toward your case.”

          After
Officer Smith told Rivas that the value of his information was insufficient to
justify releasing him, Rivas proceeded to offer the names and descriptions of
his recent customers.  Finally, Officer Smith again explained to Rivas that the
identity of his suppliers was more valuable than the identity of his customers
and stated that he had no control of the consideration Rivas might receive for
the information he provided.

          Contrary
to Rivas’s claim that Officer Smith’s statements amounted to promises of
leniency, Officer Smith stated only that the department’s options for
mitigating Rivas’s punishment were dependent upon the value of Rivas’s
information.  In fact, when Rivas asked for a guarantee that his statement
would reduce his punishment, Officer Smith stated that he could make no such
guarantee and disclaimed any authority to give Rivas consideration for his
statements, stating that he was only conducting the interview and that he would
have to refer Rivas’s statements to his sergeant.  When Rivas later asked for
an assurance that he would indeed benefit from giving Officer Smith the names
of his customers, Officer Smith stated that any consideration for Rivas’s
statements would come from “the judge and the district attorney’s office.” 
Indeed, each time he discussed the consideration that Rivas might receive for
his statements, Officer Smith deferred to other authorities, including the
“parole people,” his sergeant, and “the judge and district attorney’s office.” 
Thus, Officer Smith’s statements made no positive promise of leniency.  See Johnson,
68 S.W.3d at 654–55 (holding that police made no promise inducing defendant’s
confession by stating that they would make the defendant’s honesty known to the
court for its consideration); Garcia v. State, 919 S.W.2d 370, 388 (Tex.
Crim. App. 1994) (op. on reh’g) (holding that the interviewing officer made no
positive promise by telling the defendant that he would talk to the district
attorney and see what he could work out); Padilla v. State, No. 02-11-00336-CR,
2012 WL 4815506, at *2 (Tex. App.—Fort Worth Oct. 11, 2012, no pet.) (mem. op.,
not designated for publication) (holding that police did not improperly induce
the defendant’s confession by indicating that the district attorney may drop
the charges); Wilson v. State, 348 S.W.3d 32, 39 (Tex. App.—Houston
[14th Dist.] 2011) (holding that “the promise to ‘call the district attorney
and say . . . what really happened’ does not create an involuntary confession”),
judgment vacated on other grounds, 133 S. Ct. 108 (2012); Herrera
v. State, 194 S.W.3d 656, 659–60 (Tex. App.—Houston [14th Dist.] 2006, pet.
ref’d) (holding that police statement to defendant, “[w]e can talk to the D.A.,
get you an offer, if you can help us,” was not an improper inducement); Mason
v. State, 116 S.W.3d 248, 260 (Tex. App.—Houston [14th Dist.]
2003, pet. ref’d) (holding that an officer’s statement that “things would ‘go
better’ for [the defendant] if he cooperated” was not a promise, but a
“prediction about future events”).

          Even
assuming that Officer Smith had made a promise of some benefit, he made no
unequivocal promise that “would be likely to influence the defendant to speak
untruthfully.”  Martinez, 127 S.W.3d at 794; see Espinosa v. State,
899 S.W.2d 359, 362–64 (Tex. App.—Houston [14th Dist.] 1995, pet. ref’d)
(holding that an officer’s statement, “Go ahead and tell us what happened.  Everything
will be better for you.  You will get less time,” was insufficient to likely
induce a false confession).

          Thus
we hold that the trial court did not err by considering Rivas’s statement
because it was “freely and voluntarily made without compulsion or persuasion.”  See
Tex. Code Crim. Proc. Ann. art. 38.21.  We overrule Rivas’s third point.

IV.  Conclusion

Having
overruled Rivas’s three points, we affirm the trial court’s judgments.

 

 

PER CURIAM

 

PANEL: 
MCCOY,
J.; LIVINGSTON, C.J.; and GABRIEL, J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 14, 2013









[1]See Tex. R. App. P. 47.4.





[2]The issue of whether the
warrantless sniff test of a home by a drug detection dog is a search under the
Fourth Amendment is currently pending in the United States Supreme Court.  See
Jardines v. State, 73 So.3d 34 (Fla. 2011), cert. granted, 132 S.
Ct. 995 (2012).





[3]The State further argues
that if we find that Rivas preserved his complaint for review, we must abate
the case to the trial court for findings of fact and conclusions of law. 
However, the State’s brief was filed before we abated Rivas I so that
the trial court could make findings of fact and conclusions of law.  Because
this case involves the same facts and parties as Rivas I, we may
take judicial notice of the findings of fact and conclusions of law from Rivas
I.  See Ex parte Sotelo, 878 S.W.2d 179, 181 (Tex. App.—Fort Worth
1993, pet. ref’d) (holding that an appellate court may take judicial notice of
its own records in related proceedings involving the same parties), disapproved
of on other grounds by Ex parte Anderer, 61 S.W.3d 398, 405 (Tex.
Crim. App. 2001).